Seth "Turtle" Johnson (WBA 7-5748)
Slow and Steady Law Office, PLLC
1116 W. Farm Ave.
P.O. Box 1309
Saratoga, WY 82331
(307) 399 – 6060
Turtle@SlowandSteadyLaw.com

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| WYOMING GUN OWNERS, a Wyoming nonprofit corporation,<br><br>*Plaintiff*,<br><br>*v.*<br><br>EDWARD BUCHANAN, in his official capacity as Wyoming's Secretary of State; KAREN WHEELER, in her individual and official capacities as Wyoming's Deputy Secretary of State; KAI SCHON, in his individual and official capacities as Election Division Director for the Wyoming Secretary of State; and BRIDGET HILL, in her official capacity as Wyoming Attorney General.<br><br>*Defendants*. | Civil Action No. _____<br><br>**COMPLAINT** |

## INTRODUCTION

Americans' right to speak freely about candidates for elected office includes the right to publicly examine candidates' positions on salient policy issues. Americans also have a right to know what a law means, especially one that may sanction them

COMPLAINT - 1

for engaging in political speech. Vague laws invite arbitrary enforcement and chill speech.

Wyoming's electioneering-communications regime is both overbroad and vague as to what it defines as reportable speech, fails to clearly define which contributions and expenditures must be reported, and violates people's interest in maintaining the privacy of their political associations and preferences. In addition, Wyoming's regulatory scheme invites third parties to complain to state authorities and shut down their political opponents' speech during campaign season, when it matters most.

Plaintiff Wyoming Gun Owners ("WyGO") talks about gun policy, a subject of manifest interest to many Wyoming residents across the political spectrum. Gun policy featured prominently in Wyoming's 2020 primary and general election and will likely do so for the foreseeable future.

But due to Wyoming's electioneering-communications statute, and the manner in which Wyoming state officials have enforced it, Plaintiff WyGO is left to twist in the wind and wonder whether it can send political emails, post videos and candidate surveys, maintain its website, and speak about candidates' records in future elections. WyGO is also left to wonder how to report its contributions and expenditures, if they even are to be reported, and what it can or should tell its donors about their privacy. These statutory provisions should be struck down.

## JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983, as this case raises a federal question under the First and Fourteenth Amendments with respect to Defendants' actions against Plaintiff under color of state law.

2. Venue lies in this Court pursuant to 28 U.S.C. § 1391 because all parties reside in this judicial district, and all events or omissions giving rise to the claim occurred and are occurring in this judicial district.

PARTIES

3. Plaintiff Wyoming Gun Owners is a Wyoming nonprofit corporation that communicates with its members and other Wyoming citizens about Second Amendment issues by way of a website, radio ads, candidate questionnaires, policy commentary, video commentary, newsletters, emails, and hard-copy direct mail. These communications focus on the potential impact of state and federal legislation on gun rights, including the rights of WyGO's members.

4. Defendant Edward Buchanan is sued in his official capacity as the Wyoming Secretary of State. The Secretary of State is Wyoming's chief election officer and is tasked with maintaining uniformity in the application and operation of Wyoming's election laws, including the state statutes requiring the filing of reports for electioneering communications, as set forth in greater detail below.

5. Defendant Karen Wheeler is Wyoming's Deputy Secretary of State and is responsible for all statutory duties and operations, including carrying out the enforcement of Wyoming's statutes requiring the filing of reports for electioneering communications. She has enforced the challenged statutes against Plaintiff and stands ready to do so again. Defendant Wheeler is sued in her official and individual capacities.

6. Defendant Kai Schon is the Wyoming Secretary of State's Election Division Director and is responsible for ensuring the uniform application of Wyoming's election laws, including Wyoming's statutes requiring the filing of reports for electioneering communications. He has enforced the challenged statutes against

Plaintiff and stands ready to do so again. Defendant Schon is sued in his official and individual capacities.

7. Defendant Bridget Hill is the Wyoming Attorney General and is sued in her official capacity. The Attorney General provides legal representation to state officials, including the Secretary of State's Office, and is charged with enforcing the provisions challenged in this action.

## FACTS

### *WyGO's Mission*

8. In its current legal form, WyGO was formally incorporated on December 13, 2016, and is a non-profit corporation organized under the Internal Revenue Code and Wyoming law. Predecessor entities to WyGO have been active in Wyoming since at least 2010.

9. WyGO's mission, as declared on its website (www.wyominggunowners.org), is just "one thing: defending and advancing the 2nd Amendment rights of all law-abiding citizens in the state of Wyoming — and exposing legislators who refuse to do the same thing."

10. To advance its mission, WyGO uses a variety of media and formats to promote its message, including posting information on its website, disseminating and publishing candidate surveys, videos, emails to members and non-members, radio ads, digital ads, Facebook posts, and direct mail.

11. WyGO's promotion of its speech in these formats and on these media constitutes political speech.

### *Wyoming's Electioneering Communications Statute*

12. Wyo. Stat. § 22-25-101(c) provides:

As used in this chapter:

(i) "Electioneering communication" means, except as otherwise provided by paragraph (ii) of this subsection, any communication, including an advertisement, which is publicly distributed as a billboard, brochure, email, mailing, magazine, pamphlet or periodical, as the component of an internet website or newspaper or by the facilities of a cable television system, electronic communication network, internet streaming service, radio station, telephone or cellular system, television station or satellite system and which:

- (A) Refers to or depicts a clearly identified candidate for nomination or election to public office or a clearly identified ballot proposition and which does not expressly advocate the nomination, election or defeat of the candidate or the adoption or defeat of the ballot proposition;

- (B) Can *only* be reasonably interpreted as an appeal to vote for or against the candidate or ballot proposition;

- (C) Is made within thirty (30) calendar days of a primary election, sixty (60) calendar days of a general election or twenty-one (21) calendar days of any special election during which the candidate or ballot proposition will appear on the ballot; and

- (D) Is targeted to the electors in the geographic area:
  (I) The candidate would represent if elected; or
  (II) Affected by the ballot proposition.

(ii) "Electioneering communication" does not mean:

- (A) A communication made by an entity as a component of a newsletter or other internal communication of the entity which is distributed only to members or employees of the entity;

- (B) A communication consisting of a news report, commentary or editorial or a similar communication, protected by the first amendment to the United States constitution and article 1, section 20 of the Wyoming constitution, which is distributed as a component of an email, internet website, magazine, newspaper or periodical or by the facilities of a cable television system, electronic communication network, internet streaming service, radio station, television station or satellite system;

    * * * (emphasis added)

13. Under Wyoming law, any organization that spends over $500 during a primary or general election on "electioneering communications" must file itemized contribution and expenditure report with the Secretary of State.

14. Wyo. Stat. § 22-25-106 provides that:

\*\*\*

(h) An organization that expends in excess of five hundred dollars ($500.00) in any primary, general or special election to cause an…electioneering communication to be made shall file an *itemized statement of contributions and expenditures* with the [Secretary of State].

   The statement shall:

   (i) Identify the organization causing the electioneering communication…to be made and the individual acting on behalf of the organization causing the communication or expenditure to be made, if applicable;

   (ii) Be filed at least seven (7) days but not more than fourteen (14) days before any primary, general or special election. Any contribution received or expenditure made after the statement has been filed, through the day of the election, whether a primary, general or special election, shall be filed as an amendment to the statement within ten (10) days after the election;

   (iii) Repealed by Laws 2019, ch. 1, § 2.

   (iv) *Only list those expenditures and contributions which relate to an…electioneering communication;*

   (v) *Set forth the full and complete record of contributions which relate to an…electioneering communication,* including cash, goods or services and actual and promised expenditures. The date of each contribution of one hundred dollars ($100.00) or more, any expenditure or obligation, the name of the person from whom received or to whom paid and the purpose of each expenditure or obligation shall be listed. All contributions under one hundred dollars ($100.00) shall be reported but need not be itemized. Should the accumulation of contributions from a person exceed the one hundred dollar ($100.00) threshold, all contributions from that person shall be itemized;

   (vi) Be signed by both the chairman and treasurer of the organization, if those positions are present in the organization, or by the person who

>caused the independent expenditure or electioneering communication to be made.

(emphasis added)

15. Wyoming lacks a process for requesting and receiving advisory opinions regarding the extent of these laws. Moreover, the Secretary of State has not issued regulations clarifying the criteria by which a communication may be determined to "only be reasonably interpreted as an appeal to vote for or against [a] candidate," the criteria for distinguishing "publicly distributed" emails or mailings from "newsletters or other internal communications," what constitutes exempted "commentary," or the means of determining which donors "relate to" a communication.

*WyGO's 2020 Political Speech*

16. Wyoming held a primary election on August 18, 2020, followed by a general election on November 3, 2020.

17. During the 2020 election season, WyGO exercised its First Amendment rights to speak to its members and other Wyoming voters about salient political issues, including where candidates for office stood on Second Amendment issues. It did so by way of paid-for radio advertising, email blasts, direct mail, digital advertising and posting videos, surveys, and other commentary on its public website.

18. In August 2020, prior to the primary election, WyGO paid a commercial radio station to run a 60-second issue ad in the Cheyenne radio market. The ad cost more than $500.

19. The radio ad mentioned two opposing state senate candidates by name and discussed their positions on gun rights. The ad discussed the odds of the legislature passing a red-flag gun-seizure law. The ad also encouraged listeners to contact one of the candidates and ask that she support gun rights. However, the ad did not

COMPLAINT - 7

explicitly advocate that listeners vote for a specific candidate in the August primary election.

20. On July 15, 2020, WyGO sent an email blast to its members entitled "WYGO's Primary Action Plan!" The email solicited donations for funding the plan. It also criticized certain gun-related policy proposals and included a description of several candidates' positions on Second Amendment issues. However, the email did not urge that readers vote for a specific candidate in the August primary election.

21. The July 15 email was sent to both dues-paying WyGO members and non-members who had signed up to receive email communications from WyGO. Some of the recipients of the July 15 email were Wyoming residents who were not dues paying WyGO members.

22. On August 1, 2021, WyGO sent a direct mail piece to Wyoming residents on its mailing list that communicated information about two state senate candidates' positions on Second Amendment issues. WyGO communicated that one candidate had supported "pro-gun legislation." It also communicated that the other candidate had refused to answer WyGO's candidate survey and criticized various policy proposals.

23. The mailer included an exhortation to readers to exercise their First Amendment rights by contacting the candidates—to thank the first candidate for supporting gun rights, and to tell the second candidate that "trying to hide her views on an issue as important as our gun rights is flat-out unacceptable." However, the mailer never urged that readers vote for a specific candidate in the August primary election.

24. The August 1 mailer was sent to both dues-paying WyGO members and people whose names were obtained from a list broker and identified as likely pro-

gun voters who resided in Wyoming. Some of the recipients of the August 1 mailer were not dues-paying WyGO members.

25. On September 24, 2020, WyGO sent an email blast to its members entitled "Big Tech is Trying to Censor Your Gun Rights!" The email communicated concerns that social media platforms such as Facebook were censoring pro-gun speech, while favoring other political speech. In this email, WyGO also communicated the gun-rights policy positions of several candidates for state senate and the state house, but it never urged that readers vote for a specific candidate in the general election.

26. The September 24 email was sent to both dues-paying WyGO members and non-members who had signed up to receive email communications from WyGO. Some of the recipients of the September 24 email were Wyoming residents who were not dues paying WyGO members.

27. In addition to the above-referenced communications, WyGO also communicated similar messages by way of website postings at www.wyominggunowners.org, and digital media ads on Facebook.

28. The website content posted on WyGO's website and promoted by WyGO on Facebook during the 2020 election cycle included political commentary on gun-rights issues, candidates' answers to WyGO's questionnaire on gun-related policies, and "white-board videos."

29. "White-board videos" featured WyGO officer Aaron Dorr discussing competing candidates in Wyoming races with Mr. Dorr listing on a white dry-erase board where each candidate stood on gun-related policy issues. Such videos often included a request to contact and thank pro-gun-rights candidates, and to contact and criticize pro-gun-control candidates or candidates who would not return WyGO's questionnaire. Such videos never urged recipients to vote for or against a specific candidate.

*The Regulatory Regime's Enforcement Against WyGO*

30. The Greater Wyoming Chamber of Commerce typically supports candidates whose views on Second Amendment rights differ from those advocated by WyGO.

31. On October 12, 2020, Chamber President and CEO Dale Steenbergen wrote Defendant Kai Schon, the Elections Division Director of the Wyoming Secretary of State's Office, complaining that WyGO had violated Wyoming campaign finance laws. Steenbergen claimed that the radio ad, the July 15 and September 24 emails, and the August 1 mailer were "electioneering communications" under Wyoming law. Mr. Steenbergen asked that "actions be taken immediately" to prevent what he called further illegal interference with Wyoming elections.

32. Steenbergen also referenced WyGO's "digital ads" and "Facebook posts" in the letter, but he did not include a detailed description of such communications or provide specific examples.

33. In response to Steenbergen's letter, Defendant Buchanan's office initiated an investigation into WyGO's political speech.

34. On October 14, 2020, Defendant Kai Schon, on behalf of Defendant Buchanan, contacted WyGO's treasurer Aaron Dorr by email, announcing that Defendant Buchanan's office had concluded that unspecified "advertisements" paid for by WyGO were electioneering communications that required reporting under Wyoming law. Defendant Schon threatened to fine WyGO for failing to comply but did not explain which communications were at issue.

35. On October 21, 2020, legal counsel for WyGO wrote Defendant Schon, noting that he had failed to provide the revised complaint or exhibits of the alleged communications. Counsel also asserted that WyGO's issue advocacy was not an "electioneering communication" under Wyoming law.

36. On November 2, 2020, then-Assistant Attorney General James LaRock responded by letter to WyGO's counsel, purporting to explain why the Secretary of

State's office deemed WyGO to have engaged in "electioneering communications." First, LaRock singled out specific language in WyGO's radio ad as problematic. In particular, LaRock focused on the statement "tell Johnson that Wyoming gun owners need fighters, not country club moderates who will stab us in the back." He also asserted that the radio ad "instructs listeners which candidate to support and oppose," although words to that effect are never spoken in the ad.

37. In addition, LaRock speculated in his letter that other WyGO communications - including possibly the July 15 email, August 1 mailer, and September 24 email - may have been electioneering communications, if they were sent to persons outside of WyGO's membership.

38. WyGO did not file any reports as a result of LaRock's explanations because it believed that none of the communications at issue were "electioneering communications" under Wyoming law.

39. On December 2, 2020, Defendant Deputy Secretary of State Karen Wheeler signed a FINAL ORDER IMPOSING CIVIL PENALTY against WyGO.

40. In the Final Order, Defendant Wheeler expressed her opinion that the radio ad was an electioneering communication because "the ad can only be reasonably interpreted as an appeal to vote for Senator Bouchard and to vote against Johnson." Defendant Wheeler also found that WyGO had failed to file the required reports and imposed a fine of $500.

41. Notwithstanding the Chamber's complaints about these communications, the Final Order was silent as to the July 15 email, August 1 mailer, or September 24 email. The Final Order was also silent about digital ads and Facebook posts.

*The Regulatory Regime's Continuing Impact on WyGO's Speech*

42. WyGO intends to continue its issue advocacy, but it will reduce its activity owing to the legal uncertainty surrounding this speech. During both non-election

and election years, including within 30 days of both primary and general elections, WyGO will continue airing radio ads, posting website content, videos, digital ads, Facebook content and sending emails and direct mailers to Wyoming residents featuring materially and substantially similar content as it has in the past.

43. But WyGO cannot reasonably predict whether state officials will determine that one of its communications that merely criticizes a candidate or asks people to contact an elected official "can only be reasonably interpreted as an appeal to vote," Wyo. Stat. § 22-25-101(c)(1)(B).

44. WyGO cannot tell whether or when its communications are subject to the law as "publicly distributed . . . email[s and] mailing[s]," or whether they would fall under the exception for "newsletter[s] or other internal communication[s]" or exempted as "commentary." *See* Wyo. Stat. § 22-25-101(c)(i) and (ii)(A) and (B).

45. WyGO does not know which of its donors or contributions would "relate to" a particular electioneering communication and must therefore be disclosed. *See* Wyo. Stat. § 22-25-106(h)(iv) and (v).

46. Moreover, the uncertainty about these provisions' application makes WyGO a target for additional complaints by its political opponents, such that WyGO can reasonably expect to face further compliance costs for expressing itself even if it would ultimately prevail with respect to those complaints.

47. Consequently, WyGO's speech is chilled because it fears future enforcement action and punishment by defendants for continuing to speak about political affairs without filing reports with the state and breaching its donors' privacy.

COUNT I
RIGHT OF FREE SPEECH, U.S. CONST., AMENDS. I, XIV, 42 U.S.C. § 1983
FACIAL CHALLENGE TO WYO. STAT. § 22-25-101(C)(I) AND (II) AND § 22-25-106(H)

48. Plaintiff realleges and incorporates by reference paragraphs 1 through 47.

49. Speech concerning public affairs is the essence of self-government. The First Amendment's protections are at their fullest and most urgent in application to speech uttered during a campaign for political office. A major purpose of the First Amendment is to protect the free discussion of governmental affairs, including discussions of candidates.

50. The First Amendment protects speaker's rights to criticize political candidates, including when such speech differs from the prevailing views of government officials. It is axiomatic that the First Amendment protects minority viewpoints and does not dictate that speakers must use pleasant language when discussing political issues.

51. Although the Supreme Court recognizes a governmental interest in disclosing the identity of donors to electoral campaigns, no such interest attaches to donations funding political speech not exclusively tied to express electoral advocacy. To the contrary, the First Amendment guarantees Americans a right to speak and associate anonymously for political purposes. *See, e.g., NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958).

52. Criticizing or praising a politician for taking a position is not necessarily a call to electoral action. The distinction between discussion of issues and candidates and direct advocacy of election or defeat of candidates often dissolves in practical application. Candidates, especially incumbents, are intimately tied to public issues involving legislative proposals and governmental actions.

53. Wyoming's definition of what is and is not a reportable "electioneering communication" in Wyo. Stat. § 22-25-101(c)(i) and (ii) is facially overbroad, treating issue advocacy as express advocacy and thus as an expenditure under Wyoming campaign finance law for mentioning a candidate within 30 days of a primary election, or 60 days of a general election, in a way that only be reasonably interpreted as an appeal to vote for or against the candidate. This is overbroad and

COMPLAINT - 13

not tailored to any compelling or substantial governmental interest and unnecessarily burdens core First Amendment activity.

54. Plaintiff WyGO acknowledges that current controlling precedent allows issue advocacy that is deemed as "the functional equivalent of express advocacy" to be regulated as such, if the speech can only be interpreted as a call to vote for or against a particular candidate. However, while *Citizens United* acknowledged that this standard is "controlling law," *Citizens United v. FEC,* 558 U.S. 310, 324-25 (2010), as recently as 2007, three Justices offered that any "functional equivalency" test is hopelessly vague, , *FEC v. Wisconsin Right to Life,* 551 U.S. 449, 483 (2007) (Scalia, J., concurring in the judgment), and one Justice expressed openness to that idea, *id.* at 482 (Alito, J., concurring). Accordingly, and considering Defendants' manifest inability to distinguish between speech that expresses views about issues and candidates from speech advocating for a vote, Plaintiff respectfully preserves its claim that Wyoming's "electioneering" law is unconstitutional on its face.

55. By enforcing Wyo. Stat. § 22-25-101(c)(i) and (ii) and § 22-205-106(h), Defendants, under color of law, deprive Plaintiff, its donors, and their audience, of the right of free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and is therefore entitled to damages; declaratory as well as preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT II
RIGHT OF FREE SPEECH, U.S. CONST., AMENDS. I, XIV, 42 U.S.C. § 1983
AS-APPLIED CHALLENGE TO WYO. STAT. § 22-25-101(C)(I) AND (II) AND §22-25-106(H)

56. Plaintiff realleges and incorporates by reference paragraphs 1 through 55.

57.     Although Wyoming's electioneering definition reaches only those communications that "can only be reasonably interpreted as an appeal to vote," Wyo. Stat. § 22-25-101(c)(1)(B), Defendants have applied and threaten to continue applying this definition to WyGO's speech that can reasonably be interpreted in various ways, including as commentary on issues and candidates. Accordingly, under existing precedent, *see, e.g.*, *FEC v. Wisconsin Right to Life*, 551 U.S. 449 (2007), Wyoming's electioneering provision is unconstitutional as-applied to WyGO's speech.

58.     By enforcing Wyo. Stat. § 22-25-101(c)(i) and (ii) and § 22-205-106(h), against WyGO, Defendants, under color of law, deprive Plaintiff, its donors, and their audience, of the right of free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and is therefore entitled to damages; declaratory as well as preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

COUNT III
RIGHT OF FREE PRESS, U.S. CONST., AMENDS. I, XIV
42 U.S.C. § 1983

59.     Plaintiff realleges and incorporates by reference paragraphs 1 through 58.

60.     It has long been established that the press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion.

61.     Press entities regularly produce endorsements expressly advocating for certain policies and informing voters about candidates' positions on policy issues.

62.     Likewise, press entities regularly cover the events and actions of various candidates for office, even close to the election, and name those candidates and office holders.

63.     Wyo. Stat. § 22-25-101(c)(ii)(B) exempts communications "consisting of…commentary…or a similar communication, protected by the first amendment to the United States constitution and article 1, section 20 of the Wyoming constitution, which is distributed as a component of an email, internet website…by the facilities of a radio station,…electronic communication network…" and designates them not to be electioneering communications subject to reporting.

64.     The radio ad, July 15 email, August 1 mailer, and September 24 email all meet the definition of this exemption. Therefore, the State's finding that the radio ad was a reportable "electioneering communication" and the State's on-the-record speculation that the July 15 email, August 1 mailer, and September 24 email might be reportable "electioneering communication" amounted to arbitrary enforcement and unconstitutionally burdened WyGO's press rights. WyGO reasonably fears that its anticipated future radio ads, emails, and mailers would likewise be the subject of arbitrary and unpredictable enforcement.

65.     In addition, WyGO's posting on its website, of policy-related commentary, candidate questionnaire results, "white-board videos," as well as its use of digital ads and Facebook postings to promote such content might or might not qualify as reportable "electioneering communications."  However, WyGO's website postings are likewise protected by the First Amendment's Press Clause.

66.     By enforcing, or threatening to enforce, Wyo. Stat. § 22-25-101(c)(i) and (ii) and § 22-205-106(h) against WyGO, Defendants, under color of law, deprive Plaintiff, its donors, and their audience, of the rights of free press in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and is therefore entitled to damages;

declaratory as well as preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

## COUNT IV
### VAGUENESS, U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

67. Plaintiff realleges and incorporates by reference paragraphs 1 through 66.

68. As notice is the first element of due process, the Fourteenth Amendment guarantee of Due Process prohibits the enforcement of vague laws. The First Amendment likewise forbids the enforcement of laws that, however valid their application may in some instances, are so vague as to chill protected speech.

69. On its face and as-applied to Plaintiff WyGO, Wyoming's electioneering statute is unconstitutionally vague in three respects: (1) it is unclear which speech does or does not qualify as "electioneering;" (2) it is unclear how "publicly distributed . . . email[s and] mailing[s]" may be distinguished from speech that would fall under the exception for "newsletter[s] or other internal communication[s];" (3) it is unclear whether WyGO's email communications and other publications qualify for the exemption as "commentary … or a similar communication, protected by the first amendment[,]" and (4) it is unclear how donors and contributions are deemed to "relate to" a particular electioneering communication and what must therefore be disclosed.

70. Defendants' failure to clarify whether the July 15 email, August 1 mailer, and September 24 email were "electioneering communications" contributed to the chilling effect that these vague enactments have on WyGO's speech. In addition, Defendants' failed to clarify whether the "digital ads" referenced in Steenbergen's letter where "electioneering communications."

71. Given the private complaint system, almost any discussion of governmental affairs close to an election may trigger State investigation and regulation, and it will be only after resolving the administrative complaint that a speaker will know whether their speech is regulable. The statute may trap the innocent by not providing fair warning or foster arbitrary and discriminatory application, and it can also chill speech by operating to inhibit protected expression. Moreover, the First Amendment does not require that you retain an attorney before knowing whether you can speak, and this regime requires that.

72. By enforcing, or threatening to enforce, Wyo. Stat. § 22-25-101(c)(i) and (ii) and § 22-205-106(h) against WyGO, Defendants, under color of law, deprive Plaintiff, its donors, and their audience, of the rights of free speech and due process in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983, and is therefore entitled to damages; declaratory as well as preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

## Prayers for Relief

WHEREFORE, Plaintiff WyGO requests that judgment be entered in its favor as follows:

A. An order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Wyo. Stat. § 22-25-101(c)(i) and (ii) and § 22-205-106(h) against WyGO's publication of email communications, direct mail, website content, videos, candidate surveys, policy commentary, digital ads, Facebook posts, radio ads, or any similar publication.

B. Declaratory relief consistent with the injunction, to the effect that Wyo. Stat. § 22-25-101(c)(i) and (ii) and § 22-205-106(h) are unconstitutionally void and unenforceable as they violate the First Amendment rights of free speech and press, and the First and Fourteenth Amendments' guarantee against vague laws;

C. An order directing Secretary Buchanan to update the electronic version of the Election Division's Campaign Guide and future editions to reflect the injunction and judgment in this case, and to include them on the Election Center website at https://sos.wyo.gov/elections/ until Wyo. Stat. § 22-25-101(c)(i) and (ii) and § 22-205-106(h) are amended by the Wyoming Legislature.

D. Against Defendants Wheeler, and Schon, nominal damages in the amount of $17.91;

E. Costs of suit;

F. Attorney's fees and expenses pursuant to 42 U.S.C. § 1988; and

G. Any other relief as the Court deems just and appropriate.

Dated: June 1, 2021

Respectfully submitted,

__s/ Seth Johnson_____
Seth "Turtle" Johnson (WBA 7-5748)
Slow and Steady Law Office, PLLC
1116 W. Farm Ave.
P.O. Box 1309
Saratoga, WY 82331
(307) 399 – 6060
Turtle@SlowandSteadyLaw.com

__s/ Endel Kolde_____
Endel Kolde (pro hac vice pending)*
INSTITUTE FOR FREE SPEECH
1150 Connecticut Avenue, NW, Suite 801
Washington, DC 20036
(202) 301-1664
Facsimile: (202) 301-3399
dkolde@ifs.org

---

* Admitted in Washington State. Not admitted to practice in the District of Columbia. Currently supervised by D.C. licensed attorneys.

   *s/Stephen Klein*
Stephen Klein (pro hac vice pending)
BARR & KLEIN PLLC
1629 K St NW Ste. 300
Washington, DC 20006
(202) 804-6676
steve@barrklein.com

*Counsel for Plaintiff*

COMPLAINT - 20