IN THE UNITED STATES DISTRICT COURT



FOR THE DISTRICT OF WYOMING

---

WYOMING GUN OWNERS, *a Wyoming nonprofit corporation, also known as WyGO*,

        Plaintiff,

  vs.

WYOMING SECRETARY OF STATE, *et al*,

        Defendants.

Case No.  21-CV-108-SWS

---

## ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTION TO DISMISS

---

This matter comes before the Court on Defendants Wyoming Secretary of State Edward Buchanan, Wyoming Deputy Secretary of State Karen Wheeler, Election Division Director for the Wyoming Secretary of State Kai Schon, and Wyoming Attorney General Bridgett Hill's *Motion to Dismiss*. (ECF No. 23.) Plaintiff Wyoming Gun Owners opposes the motion. (ECF No. 31.) Having reviewed the parties' briefing and otherwise being fully advised, the Court finds as follows:

### BACKGROUND

Plaintiff Wyoming Gun Owners ("WyGO") is a non-profit corporation whose mission is "defending and advancing the 2nd Amendment rights of all law-abiding citizens in the state of Wyoming – and exposing legislators who refuse to do the same thing." (ECF

No. 30 at 6.) WyGO is comprised of many members who subscribe to receive communications from WyGO about pertinent issues relevant especially to state and local Second Amendment legislation. According to WyGO, anyone who donates to the organization is designated as a member. (*Id*. at 7.) Anyone can sign up to receive emails from WyGO about gun policy and candidate positions. (*Id*.) WyGO uses a variety of media and methods to promote its messaging, including posts to its own website, dissemination of candidate surveys, videos, emails to members and non-members, radio ads, digital ads, Facebook and other social media posts, and direct mailings. (*Id*. at 6.) WyGO oftentimes increases its messaging during election season when gun-policy issues often peak public interest.

In August of 2020, just before Wyoming's primary election, WyGO paid a commercial radio station roughly $1,229 to run a minute-long "issue ad" in the Cheyenne radio market. (*Id*. at 7.) The radio advertisement mentioned two opposing state senate candidates by name, commending one candidate for supporting gun rights, and criticizing the other for silence on the issue and potential hostility to gun rights. (*Id*.) Around the same time, WyGO sent emails and direct mailings to its members soliciting donations for funding its "Primary Action Plan", communicating about "likely pro-gun Wyoming voters," and expressing concerns it had that social media platforms were censoring "pro-gun speech." (*Id*. at 7–8.) It posted similar messages, digital media ads, and videos on its website and social media pages. (*Id*. at 8–9.)

On October 14, 2020, WyGO received a notice from Kai Shon, the Election Division Director of the Wyoming Secretary of State's Office, indicating they had received

a complaint alleging WyGO had engaged in political activity requiring campaign finance reports, which WyGO had not filed. (*Id.* at 9, *see also* ECF No. 30-6.) Mr. Schon indicated in the letter that the Secretary of State's Office was aware WyGO had paid for unspecified advertisements and failed to comply with the requirements set forth in Wyo. Stat. § 22-25-106(h). (*Id.*) Because of its failure to comply, Mr. Schon explained WyGO had twenty-one days to comply with the reporting requirements in the statute, or be subject to a civil penalty of $500. (*Id.*) The Wyoming Secretary of State received the original complaint about WyGO's purported electioneering communications from the Greater Wyoming Chamber of Commerce, which WyGO alleges "typically supports candidates who differ from WyGO on Second Amendment rights." (*Id.*; *see also see* ECF No. 30-5.)

On October 21, 2020, counsel for WyGO responded to Mr. Schon, indicating that Mr. Schon failed to provide the actual complaint the Wyoming Secretary of State's Office had received or exhibits of the alleged electioneering communications. (ECF No. 30-7.) WyGO's counsel also stated his position that WyGO's issue advocacy was not an electioneering communication. (ECF No. 30-7.) The letter also asked the Wyoming Secretary of State's Office to "retract [its] threat against WyGO and dismiss the complaint of [the Greater Wyoming Chamber of Commerce] as baseless political bushwacking." (*Id.* at 2.)

On November 2, 2020, WyGO received a letter from James LaRock, Assistant Attorney General for Wyoming, explaining why the advertisements WyGO paid for were considered electioneering communications under Wyoming law. (ECF No. 30-8.) Mr. LaRock set forth the statutory definition of electioneering communications and specifically

Page 3 of 30

explained how WyGO's radio advertisement was covered by that definition. (*Id*. at 2–3.) Mr. LaRock also indicated other exhibits attached to the complaint by the Greater Wyoming Chamber of Commerce "may be electioneering communications if they were sent to individuals outside of WyGO's membership." (*Id*. at 3.) Finally, Mr. LaRock directed WyGO to file a campaign finance report listing contributions and expenditures related to the radio advertisement "as well as any other electioneering communications WyGO caused to be made during the primary election." (*Id*. at 4.) WyGO declined to file a campaign finance report listing its contributions and expenditures related to the radio advertisement or any other communication or media it disseminated prior to the primary election.

Having received no campaign finance report from WyGO within the allotted time period, on December 2, 2020, Deputy Secretary of State Karen Wheeler signed a *Final Order Imposing Civil Penalty* against WyGO for only the radio advertisement. (ECF No. 30-9.) In imposing the penalty, the order explained, in part,

> 8. Before the 2020 primary election, Wyoming Gun Owners communicated with its members to express its intent to spend over $50,000 on digital ads, direct mail, email, and literature to support or oppose specific candidates in three state legislative races, including the race for the Republican nomination to represent State Senate District 6.
>
> 9. On August 7, 2020, Wyoming Gun Owners, through a third party, spent $1,229.10 for advertisement time on KGAB, a radio station that serves Cheyenne and southeast Wyoming.
>
> 10. Wyoming Gun Owners, through a third party, submitted an ad to run on KGAB. The ad expressly identified Senator Anthony Bouchard and Erin Johnson, candidates for the Republican nomination to represent State Senate District 6, a senate district that encompasses part of Cheyenne, eastern Laramie County, and part of Goshen County.

11. The ad described Senator Bouchard as a "brave champion" who will "fight for your gun rights" and "stand against" the "violent thugs [who] are rioting, looting, and vandalizing." The ad referred to Johnson as "pathetic" and warned that candidates like Johnson would "stab us in the back the first chance they get."

(*Id*. at 3) (internal references omitted). Finding the radio ad to be an electioneering communication under the meaning of the statute, and finding WyGO failed to file a report with the Secretary of State's Office listing itemized contributions and expenditures related to the radio ad, the Secretary of State determined a $500 civil penalty was required under Wyo. Stat. § 22-25-108(f). (*Id*. at 3–4.) The order was silent as to any other emails, mailers, or other communications by WyGO, penalizing WyGO only for the radio advertisement.

On June 1, 2021, WyGO filed a Complaint against Defendants Wyoming Secretary of State Edward Buchanan, Wyoming Deputy Secretary of State Karen Wheeler, Election Division Director for the Wyoming Secretary of State Kai Schon, and Wyoming Attorney General Bridgett Hill ("Defendants"). (ECF No. 1.) The Complaint alleges Wyoming's Electioneering Communications Statute is unconstitutional for several reasons. First, WyGO alleges the statutory scheme infringes on WyGO's First Amendment right of free speech both facially and as applied. (*Id*. at 12–15, Counts One and Two.) WyGO next alleges the statutory scheme violates WyGO's First Amendment right of free press. (*Id*. at 15–17, Count Three.) Finally, WyGO alleges the statute is unconstitutionally vague. (*Id*. at 17–18, Count Four.)

The Defendants have moved to dismiss WyGO's complaint under grounds of Eleventh Amendment Sovereign Immunity and for failure to state a claim. (ECF No. 23.)

First, Defendants argue WyGO's official capacity claims are barred by sovereign immunity since the state officials were acting in their official capacity, making them immune from suit. (*Id.* at 6.) Next the Defendants argue the individual capacity claims against Defendants Wheeler and Schon should be dismissed under qualified immunity. (*Id.* at 9.) Finally, Defendants assert WyGO has failed to state a claim for which relief can be granted on each of its constitutional claims.

## LEGAL STANDARD

The standard of review on a motion to dismiss is well-established. To survive a motion to dismiss, a plaintiff's "complaint must contain sufficient factual matter... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl Corp v. Twombly*, 550 U.S. 544, 570 (2007)). For the claims of a complaint to meet the standard of plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is "not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, although the plaintiff does not need to provide detailed factual allegations, "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is deficient. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When ruling on a motion to dismiss for failure to state a claim, it is not the Court's function "to weigh [the] potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565–66 (10th Cir. 1991). It must accept all factual allegations in the complaint as true. *Twombly*, 550 U.S. at 572. The Court must also view the facts in the light most favorable to the non-moving party. *Sutton v. Utah State Sch. For Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). And, while factual assertions are accepted as true, legal conclusions are not. *Berneike v. CitiMortgage*, 708 F.3d 1141, 1144 (10th Cir. 2013).

## DISCUSSION

This case centers around whether Wyoming Statute § 22-25-106(h) imposes an unconstitutional restriction on First Amendment right to free speech. Plaintiff challenges the statute's constitutionality on its face and as applied to Plaintiff, justifying a claim under 42 U.S.C. § 1983. (ECF No. 1 at 12–15.) Plaintiff also contends the statutory scheme challenges Plaintiff's right to free press (*Id.* at 15–17) and is unconstitutionally vague, also justifying claims under § 1983. (*Id.* at 17–18.) The Plaintiff brings all four claims against Wyoming Secretary of State Edward Buchanan, Wyoming Deputy Secretary of State Karen Wheeler, Election Division Director for the Wyoming Secretary of State Kai Schon, and Wyoming Attorney General Bridgett Hill. However, Plaintiff also brings the claims against Karen Wheeler and Kai Schon in their individual capacities. Before addressing the plausibility of the four claims, the Court will first address the official-capacity and individual-capacity claims.

*Official Capacity Claims*

The Defendants argue Plaintiff's official capacity claims are barred by sovereign immunity, which protects the state and its respective agencies and officials from being sued. (*See* ECF No. 24 at 6.) The Eleventh Amendment guarantees state sovereign immunity from suits brought by their "own citizens, by citizens of other states, by foreign sovereigns, and by Indian Tribes." *Prairie Band Potawatomi Nation v. Wagon*, 476 F.3d 818, 838 (10th Cir. 2007). Likewise, courts will not entertain suits against state agencies or state officials, for the same reason, as those suits amount to actions against the state itself. *ANR Pipeline Co. v. LaFaver*, 150 F.3d 1178, 1188–89 (10th Cir. 1998).

However, there are three exceptions to the sovereign immunity doctrine. First, a state may consent to suit. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 159, 1166 (10th Cir. 2012). Second, Congress may expressly abrogate state sovereign immunity. *Id*. Third, litigants may sue state officers for prospective injunctive relief under the *Ex Parte Young* doctrine. *Chamber of Commerce of the United States v. Edmondson*, 592 F.3d 742, 760 (10th Cir. 2010) (citing *Ex Parte Young*, 2009 U.S. 123, 159–60 (1908)). The parties do not contest that the first and second exceptions do not apply to this case, but disagree as to whether the third exception allows suit in this case. (*See* ECF No. 31 at 6–7.) Defendants argue the third exception is not applicable because Plaintiff fails to satisfy the second prong of the *Ex Parte Young* test. (ECF No. 24 at 8.) After reviewing the complaint, the Court agrees with Plaintiff that the third exception applies.

The *Ex Parte Young* doctrine has evolved over the years. Under *Ex Parte Young*, a party may sue a state official seeking only prospective equitable relief for violations of

federal law. *See Edmondson*, 594 F.3d at 760. To allege a proper claim under *Ex Parte Young*, the court "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal citation and quotation marks omitted) (alteration in original). To determine whether a complaint is sufficient, courts employee a three-pronged test: "(1) whether the case is against state officials or the state itself; (2) whether the complaint alleges an ongoing violation of federal law; and (3) whether the relief sought is prospective relief." *EagleMed, LLC v. Wyoming*, 227 F.Supp.3d 1255, 1267 (D. Wyo. May 16, 2016) (reversed on other grounds).

In this case, the Defendants concede Plaintiff has satisfied the first and third prongs of the test. Defendants only contend the complaint does not allege an ongoing violation of federal law, but Plaintiffs have successfully pleaded this second prong as well. The complaint alleges the state officials are enforcing an unconstitutional statute against the Plaintiff and the Plaintiff has a non-frivolous, substantial claim for relief. This prong does not require the Court to ascertain whether state officials actually violated federal law. *See Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). Instead, the Court only needs to "determine whether Plaintiffs state a non-frivolous, substantial claim for relief against the state officers that does not merely allege a violation of federal law solely for the purpose of obtaining jurisdiction." *Id.* (citing *Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850, 866 (10th Cir. 2003) (internal quotations omitted). The Plaintiff claims against Wyoming state officials alleges Wyoming's electioneering communications disclosure regime is unconstitutional, facially

and as applied. Plaintiff is seeking prospective damages for this violation. Thus, the complaint satisfies the Ex Parte Young test and the official capacity claims are not barred by Eleventh Amendment sovereign immunity. *See EagleMed*, 227 F.Supp.3d at 1267–68.

However, part of the relief sought by the Plaintiff is retrospective. The Plaintiff requests nominal damages of $17.91 and attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1983. (ECF No. 1 at 19.) In fact, every claim in Plaintiff's complaint is lodged under § 1983. The request for payment of nominal damages suffered in the past will be denied, as it is not prospective and must fail. *See EagleMed*, 227 F.Supp.3d at 1267. Turning to the claims under § 1983 seeking awards for attorney's fees and expenses, and not just for injunctive relief, the Defendants seek dismissal, arguing § 1983 claims against state officials are barred by sovereign immunity since they are effectively against the state. (ECF No. 24 at 9, ECF No. 32 at 1–2.) Defendants cite to *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) for the proposition that state officials cannot be sued under § 1983. (ECF No. 32 at 2.)

In this instance, Defendants correctly assert that Plaintiff's § 1983 claims seeking attorney's fees and costs against official capacity Defendants are barred by the Eleventh Amendment. "The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The same theory applies when state officials are sued for damages in their official capacity. *Id.* (citing *Cory v. White*, 457 U.S. 85, 90 (1982)). Official-capacity suits, different than individual capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an

**Page 10 of 30**

agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978). This makes sense because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents . . ." *Graham*, 473 U.S. at 169. (internal citations omitted).

To recover under an official capacity action, a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation. *See Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (internal quotations omitted). Again, absent waiver by the state or valid congressional override, the Eleventh Amendment bars a damages action against a state in federal court. This bar remains in effect when State officials are sued for damages in their official capacity. *Cory*, 457 U.S. at 90. In this case, the official capacity claims against Defendants for damages—other than prospective relief under *Ex Parte Young*—cannot be maintained against any of the official-capacity defendants in this case. Accordingly, the § 1983 claims against Defendants Buchanan, Wheeler, Schon, and Hill in their official capacity must fail and the Court will only resolve the claims for declaratory relief. *See Graham*, 473 U.S. at 170 ("[Respondents] freely concede that money damages were never sought from the Commonwealth and could not have been awarded against it; respondents cannot reach this same end simply by suing State officials in their official capacity.").

### *Individual Capacity Claims against Defendants Wheeler and Schon*

Next, the Defendants argue individual defendants Wheeler and Schon are entitled to qualified immunity. (ECF No. 24 at 9.) Defendants allege that Plaintiff has failed to meet its burden of establishing facts that demonstrate a violation of a constitutional right which

was clearly established at the time of the individual defendants' conduct. Actions under §

1983 can hold government employees or officials personally liable for money damages if

they violate a federal constitutional right. 42 U.S.C. § 1983. Qualified immunity is a

defense to a § 1983 claim. *See Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

"[G]overnment officials are not subject to damages liability for the performance of their

discretionary functions when their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Id*. (citing *Buckley

v. Fitzsimmons*, 509 U.S. 259, 268 (1993)). Qualified immunity provides protection to all

state officers unless they are obviously incompetent or purposely violate the law. *Malley

v. Briggs*, 475 U.S. 335, 341 (1986). Courts employ a two-part test to analyze a qualified

immunity defense. "In resolving a motion to dismiss based on qualified immunity, a court

must consider whether the facts that a plaintiff has alleged make out a violation of a

constitutional right, and whether the right at issue was clearly established at the time of

defendant's alleged misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719,

732 (10th Cir. 2011) (internal quotations omitted).

The Court has discretion to decide which of the two prongs should be addressed first

in light of the circumstances. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here,

the Court will first address the prong analyzing whether there was a clearly established

right. Whether a right is "clearly established" is an objective test: "The relevant, dispositive

inquiry in determining whether a right is clearly established is whether it would be clear to

a reasonable officer that his conduct was unlawful in the situation he confronted." *Stearns

v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010). "In order for the law to be clearly

established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (internal quotation omitted). If the right is not clearly established, the court may find qualified immunity without determining the constitutionality of the conduct. *Apodaca v. Raemish*, 864 F.3d 1071, 1076 (10th Cir. 2017).

Plaintiff argues that it was clearly established in the Tenth Circuit that "state authorities may not favor the institutional press over other similar speakers and that earmarking requirements are essential for narrow tailoring." (ECF No. 31 at 20.) In support, it first cites to *Citizens United v. Gessler*, 773 F.3d 200, 212 (2014). Relying on *Gessler*, Plaintiff asserts that WyGO "stands in the shoes of Citizens United" which was treated the same as the exempted media since the group was so functionally similar to the press. (ECF No. 31 at 22.) Arguing WyGO is the same as Citizens United, Plaintiff argues its communications are mostly all exempted from Wyoming's disclosure requirements. (*Id.*) WyGO also cites Tenth Circuit's decision in *Independence Institute* to support its argument that enforcing a statute requiring disclosure without an earmarking requirement is clearly established as unconstitutional. (*Id.*) Neither *Gessler* nor *Independence Institute* demonstrate precedent sufficiently on point to the facts of this case that it puts the constitutional issue "beyond debate." *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015).

In *Gessler*, Citizens United, a political advocacy group, filed suit against Colorado's Secretary of State, challenging Colorado's electioneering disclosure provisions under the First Amendment. The suit came after the Secretary of State imposed certain electioneering

disclosure requirements on Citizens United for a production of a film titled *Rocky Mountain Heist* which centered around the alleged impact of various advocacy groups on Colorado government and policy. 773 F.3d at 202. Citizens United argued it was treated differently from the media, which was exempted from Colorado's disclosure requirements by statute. The Tenth Circuit determined Citizens United was akin to the media, which enjoyed an exemption in disclosure, primarily since it had "an extended history of producing substantial work, comparable to magazines or TB special news reports rather than advertisement sound bites," noting the film at issue was Citizen United's twenty-fifth film on political and religious topics over the course of ten years. *Id*. at 215.

However, while the Tenth Circuit agreed that Citizens United was exempted from providing electioneering communications disclosures under Colorado's statutory definition, it did note that "there could be challenging questions about what entities are entitled to the same relief as Citizens United[,]" leaving open the determination of those decisions to the Secretary of State. *Id*. at 217. Furthermore, and importantly to this case, the Tenth Circuit determined, while the film itself exempted Citizens United from disclosure requirements under the statutory definition, advertisements for the film "that mention a candidate or express support or opposition to election of a candidate" were not exempted. *Id*. at 217–18. This is because Citizens United failed to show that such advertisements were exempted under Colorado's media exception, and thus, Citizens United failed to show it was being treated differently from the media in that respect. Accordingly, the court granted no relief to Citizens United from disclosure requirements applied to its advertising. *Id*. at 218.

Plaintiff attempts to stretch the holding in *Gessler*, arguing it is entitled to the same treatment as Citizens United and should be exempted under Wyo. Stat. § 22-25-101(c)(ii)(B). However, the *Gessler* case does not support such a legal conclusion, because even if WyGO was equivalent to Citizens United, its advertisements would still be subject to disclosure under *Gessler*. Moreover, the Tenth Circuit recognized the inherent difficulty in determining which organizations were entitled to the same exemption as the free press under Colorado's statute. *See Gessler*, 773 F.3d at 217. WyGO attempts to argue that its "clearly established right" is to be treated like the exempted media, but the *Gessler* case does not stretch so far. Thus, it would not be clear to a reasonable officer, in this case, the individual defendants, that their imposing of a civil penalty for WyGO's failure to disclose was unlawful in this situation. *See Stearns*, 615 F.3d at 1282.

Nor would *Independence Institute* put the individual defendants on notice that disclosure statutes should contain an earmarking requirement, because that case did require an earmarking requirement. In Independence Institute, earmarking was only one of the factors the court considered in determining whether the statute was narrowly tailored, but alone was not dispositive. *See* 812 F.3d at 797. The Court also considered that the statute 1) "only demands disclosure for communications that unambiguously refer to a primary-election candidate within thirty days of a primary election or a general-election candidate within sixty days of a general election;" 2) that "[t]he message also must be targeted to the relevant electorate;" 3) that only certain means of communication were covered; and 4) the monetary amount triggering disclosure. *Id*. at 797–98. The Court held that while the disclosure requirements "undoubtedly chill potential donors to some extent, these

requirements are sufficiently drawn to serve the public's informational interest and are less restrictive than other alternatives." *Id*. at 798. Accordingly, despite Plaintiff's contention, *Independence Institute* and *Gessler* do not clearly establish that small-dollar donations should only be subject to disclosure in the presence of an earmarking component.

Plaintiff fails to satisfy its burden under the second prong of qualified immunity. No reasonable officer of the state would have known it was unlawfully imposing a penalty due to WyGO's failure to adhere to disclosure requirements for its radio advertisement. The alleged defendants did not knowingly violate a law or act in a "plainly incompetent" manner. *Malley*, 475 U.S. at 341. Accordingly, the Court finds the individual defendants are entitled to qualified immunity. *Apodaca*, 864 F.3d at 1076 ("But if the right were not clearly established, we may find qualified immunity without deciding the constitutionality of the conduct.") (citing *Pearson v. Callahan*, 555 U.S. 223, 236–42 (2009)).

### *Failure to State a Claim*

Defendants finally argue that, in addition to the jurisdiction deficiencies in Plaintiff's § 1983 claims, all of Plaintiff's declaratory claims fail to state a claim for which relief can be granted. Plaintiff asserts four claims involving the definition of electioneering communications and associated reporting and disclosure requirements. First, WyGO claims that the definition of an electioneering communication in Wyo. Stat. Ann. § 22-25-101(c) is overbroad. Second, WyGO asserts Defendants' enforcement of the electioneering communications statute and reporting requirement in Wyo. Stat. Ann. § 22-25-106(h) violates its First Amendment rights as applied to WyGO. Third, WyGO asserts it has been deprived of the right to free press because its communications are "commentary" and thus,

**Page 16 of 30**

not electioneering communications. Finally, WyGO claims the statutes are unconstitutionally vague.

1. **Claim I: Facial Overbreadth Challenge to Wyo. Stat. § 22-25-101(c)(i)-(ii) and 106(h)**

To assert a facial overbreadth claim, a plaintiff must demonstrate that the challenged law (1) "could never be applied in a valid manner," or (2) even though it may be validly applied to some, "it nevertheless is so broad that it may inhibit the constitutionally protected speech of third parties." *Western Watersheds Project v. Michael*, 196 F.Supp.3d 1231, 1243 (D. Wyo. 2016) (citing *N.Y. State Club Ass'n, Inc. v. City of New York,* 487 U.S. 1, 11 (1988)). A facial challenge is a difficult argument to successfully make, because the challenger must show that there is no scenario under which the law would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987). "The 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *United States v. Williams*, 553 U.S. 285, 301 (2008) (quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)). However, in the context of free speech, the Supreme Court also recognizes a second type of facial challenge "whereby a law may be invalidated as overbroad 'if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 472 (2010) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).

Plaintiff challenges the definition of electioneering communications found in Wyo. Stat. § 22-25-101(c) as facially overbroad, "treating issue advocacy as express advocacy

**Page 17 of 30**

and thus as an expenditure under Wyoming campaign finance law for mentioning a candidate within 30 days of a primary election, or 60 days of a general election, in a way that only be reasonably interpreted as an appeal to vote for or against the candidate." (ECF No. 1 at 13.) Even if taken as true, though, "no realistic danger exists that [the statute's definition] will significantly compromise First Amendment protections of parties not before the court." *West*, 206 F.3d at 1367 (quoting *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984) (internal quotations omitted)). The definition Plaintiff asserts to be facially overbroad reads:

> "Electioneering communication" means, except as otherwise provided by paragraph (ii) of this subsection, any communication, including an advertisement, which is publicly distributed as a billboard, brochure, email, mailing, magazine, pamphlet or periodical, as the component of an internet website or newspaper or by the facilities of a cable television system, electronic communication network, internet streaming service, radio station, telephone or cellular system, television station or satellite system and which:
>
> (A) Refers to or depicts a clearly identified candidate for nomination or election to public office or a clearly identified ballot proposition and which does not expressly advocate the nomination, election or defeat of the candidate or the adoption or defeat of the ballot proposition;
>
> (B) *Can only be reasonably interpreted as an appeal to vote for or against the candidate or ballot proposition*;
>
> (C) Is made within thirty (30) calendar days of a primary election, sixty (60) calendar days of a general election or twenty-one (21) calendar days of any special election during which the candidate or ballot proposition will appear on the ballot; and
>
> (D) Is targeted to the electors in the geographic area:
>
> > (I) The candidate would represent if elected; or
> > (II) Affected by the ballot proposition.

Wyo. Stat. § 22-25-101(c)(i) (emphasis added).

Plaintiff's overbreadth claim relates to the state treating issue advocacy as express advocacy, which it concedes is consistent with controlling precedent. Plaintiff takes issue

with the emphasized portion of the definition. (*See* ECF No. 1 at 14.) In *Citizens United v. Federal Election Comm'n*, 558 U.S. 310 (2010), the Supreme Court upheld the functional-equivalent test, which says that "[a communication] is the functional equivalent of express advocacy only if [it] is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *Id.* at 324–25. Plaintiff appears to acknowledge Wyoming's statute applies this test, which is currently consistent under controlling law. (ECF No. 1 at 14.) Nevertheless, due to recent Supreme Court cases where Justices have offered opinions indicating their wariness about the vagueness of the test, Plaintiff seeks to preserve the question of constitutionality. (*Id.*)

This falls short of stating a claim upon which relief can be granted for a facial vagueness challenge. Plaintiff does not allege *any* impermissible applications of the statute, including against WyGO, conceding "current controlling precedent allows issue advocacy that is deemed as 'the functional equivalent of express advocacy' to be regulated as such, if the speech can only be interpreted as a call to vote for or against a particular candidate." (*Id.*) Plaintiff fails to allege anything in its complaint about how the statute's definition will significantly compromise First Amendment protections of parties not before the court. Nor has Plaintiff alleged any number of applications of the statute's definition have been unconstitutional. Plaintiff alleges no additional facts pertaining to the overbreadth of Wyo. Stat. § 22-25-101(c)(ii) or 106(h). Plaintiff's facial overbreadth challenge of Wyoming's definition of electioneering communications fails to state a claim upon which relief can be granted.

**2. Claim II: As-Applied Challenge to Wyo. Stat. § 22-25-101(c)(i)-(ii) and 106(h).**

Next, Plaintiff asserts in its complaint that Wyoming's electioneering disclosure regime is unconstitutional as applied to WyGO by applying and threatening to apply the definition of electioneering communications to WyGO's speech which it alleges "can reasonably be interpreted in various ways[.]" (ECF No. 1 at 15.) Plaintiff specifically takes issue with Wyoming's electioneering definition which reaches communications that "[c]an only be reasonably interpreted as an appeal to vote for or against the candidate or ballot proposition." Wyo. Stat. § 22-25-101(c)(i)(B). Citing to *Federal Election Com'n v. Wisconsin Right to Life, Inc.*, Plaintiff argues the statute is unconstitutional as applied to WyGO's speech. *See* 551 U.S. 449 (2007).

The only facts alleged in Plaintiff's complaint indicating the statute was ever applied to WyGO is the Secretary of State's imposition of a civil penalty against WyGO for its radio advertisement mentioning two opposing state senate candidates. (*See* ECF No. 1 at 7, 11.) Plaintiff argues this was an unconstitutional application of the statutory definition, as WyGO's radio advertisement "had multiple purposes, including prompting candidates to state their positions on gun rights and influencing the candidates to support gun rights. Thus, it could not *only* be understood as an appeal to vote for or against a certain candidate." (ECF No. 31 at 9) (internal citations omitted) (emphasis in original).

Plaintiff's factual allegations in the complaint, while brief, are sufficient to assert a plausible claim for an as applied challenge to the constitutionality of Wyo. Stat. § 22-25-101(c)(i)-(ii) and 106(h). Without further factual development the Court declines to determine the merits of the charges against the Defendants at this stage of the litigation.

**Page 20 of 30**

### Claim III: Right of Free Press

Plaintiff's next claim relates to its as-applied challenge, specifically as to the electioneering communications definition which sets forth certain exemptions. Plaintiff continues to argue its radio advertisements and other communications are exempt under the definition. It argues the Defendants' finding that the radio advertisement was not exempt, in addition to the Defendants' letter indicating other WyGO communications could be categorized as electioneering communications, "amounted to arbitrary enforcement and unconstitutionally burdened WyGO's press rights." (ECF No. 1 at 16.)

Plaintiff fails to set forth facts in its complaint to allege that the Defendants' enforcement of its electioneering disclosure statute was arbitrary or burdensome to WyGO's press rights. Nor does Plaintiff set forth authority to support such a proposition. Plaintiff alleges WyGO's communications meet the definition of the exemption of electioneering communications, which is nothing more than a legal conclusion this Court need not accept as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Following this, Plaintiff claims the Defendants' finding to the contrary violated its rights to freedom of the press. Again, Plaintiff does not have any facts to support this argument.

The facts asserted in the complaint allege the Defendants categorized WyGO's radio advertisement as an electioneering subject to disclosure requirements under Wyo. Stat. § 22-25-106(h), Defendants informed Plaintiff of their position on the matter, provided Plaintiff time to comply with the disclosure requirement, and imposed a civil penalty after Plaintiff failed to do so. (ECF No. 1 at 10–11.) None of these actions taken by Defendant

rise to the level of a freedom of the press violation. "The freedom of speech and of the press guaranteed by the Constitution embraces at least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment." *Thornhill v. Alabama*, 310 U.S. 88, 101–02 (1940). The Defendants did not restrain WyGO's speech, nor did their categorization of WyGO's radio advertisement rise to the level of "subsequent punishment." Plaintiff was not restricted from publishing the radio advertisement, nor was it subsequently punished for doing so. *See, e.g., Citizens United*, 558 U.S. at 390 n. 6 (Scalia, J., concurring) (citing 2 American Dictionary of the English Language (1828) (reprinted 1970) ("Liberty of the press, in civil policy, is the free right of publishing books, pamphlets or papers without previous restraint; or the unrestrained right which every citizen enjoys of publishing his thoughts and opinions, subject only to punishment for publishing what is pernicious to morals or to the peace of the state."). Plaintiff cites no authority under which a disclosure requirement is an imposition of punishment or restraint on speech, nor does this Court find one. *See id.* (finding a Government may impose disclosure requirements on speech). Accordingly, Plaintiff fails to state a claim for violation of freedom of the press.

### 3. Claim IV: Vagueness

Plaintiff's final claim alleges Wyoming's electioneering statute is unconstitutionally vague, both facially and as applied to WyGO. (ECF No. 1 at 17.) In support, Plaintiff cites to four areas where it contends the statutes at issue are vague. First, Plaintiff asserts it is "unclear which speech does or does not qualify as 'electioneering.'" Second, Plaintiff asserts it is unclear how "publicly distributed . . . email[s and] mailing[s]" may be

distinguished from speech that would fall under the exception for "newsletter[s] or other internal communication[s]. Third, Plaintiff asserts it is unclear whether WyGO's email communications and other publications qualify for the exemption as "commentary . . . or a similar communication, protected by the first amendment." Finally, Plaintiff asserts it is unclear how donors and contributions are deemed to "relate to" a particular electioneering communication and what must therefore be disclosed. (*Id.*)

The vagueness doctrine is not an outgrowth of the First Amendment, but of the Fifth Amendment Due Process Clause. *United States v. Williams*, 553 U.S. 285, 304 (2008). A statute may be found impermissibly vague: (1) "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Faustin v. City and Cty. of Denver, Colo.*, 423 F.3d 1192, 1201 (10th Cir. 2005). Similar to an overbreadth argument, this is a difficult challenge to raise successfully. *See Salerno*, 481 U.S. at 745. "Perfect clarity and precise guidance" are not required. *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). "The Supreme Court has cautioned that 'speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a state when it is surely valid in the vast majority of intended applications.'" *Ward v. Utah*, 398 F.3d 1239, 1251 (10th Cir. 2005) (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)). "Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, . . . the more important aspect of vagueness doctrine is . . . the requirement that a legislature establish minimal guidelines to govern law enforcement." *Id.* (quoting *Kolender v. Lawson*,

461 U.S. 352, 357 (1983)). Thus, this Court must consider whether the challenged statutes lack fair notice or sufficient law-enforcement guidance.

To begin with Plaintiff's facial vagueness challenge, the Court notes a similarity in standard to Plaintiff's facial overbreadth challenge. Both the vagueness and overbreadth questions involve the same preliminary inquiry into whether the statute will have a substantial effect on constitutionally protected activity. *Center for Individual Freedom v. Madigan*, 697 F.3d 464, 479 (7th Cir. 2012). "In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Id.* (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 (1982)). If it does not, then under either theory, the facial challenge must fail.

Plaintiff's facial vagueness claim is like its facial overbreadth claim, except for it takes issue with more terms and definitions in Wyoming's electioneering disclosure statutes. Despite the additional challenges, however, it still lacks any set of facts tending to show the vagueness "reaches a substantial amount of constitutionally protected conduct." Plaintiff does not allege any amount of constitutionally protected conduct was impacted by the apparently vague statutory provisions besides its own. (*See* ECF No. 1 at 17–18.) Plaintiff does note the statute "may trap the innocent by not providing fair warning or foster arbitrary and discriminatory application, and it can also chill speech by operating to inhibit protected expression." (*Id.* at 17.) But this is no more than a hypothetical situation not presently before the Court. *See Ward*, 398 F.3d at 1251. In sum, Plaintiff fails to set forth facts to state a claim for a facial vagueness challenge to Wyoming's electioneering

disclosure statutes, as it fails to allege any "real and substantial" chilling effect on protected expression to justify invalidation on that basis. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975). Accordingly, Plaintiff's facial vagueness challenge fails to state a claim for which relief can be granted.

Turning to Plaintiff's as-applied challenges, the Court must "tether [its] analysis to the factual context in which the ordinance was applied." *Galbreath v. City of Oklahoma City*, 568 F.App'x. 534, 539 (10th Cir. 2014). "An as-applied challenge concedes that the statute may be constitutional in many of its applications, but contends that it is not so under the particular circumstances of the case." *United States v. Carel*, 668 F.3d 1211, 1217 (10th Cir. 2011). In the circumstances of this case, the Defendants only applied the electioneering disclosure statutes to one of Plaintiff's communications–the radio advertisement.

Wyoming's definition of electioneering communications states:

"Electioneering communication" means, except as otherwise provided by paragraph (ii) of this subsection, any communication, including an advertisement, which is publicly distributed as a billboard, brochure, email, mailing, magazine, pamphlet or periodical, as the component of an internet website or newspaper or by the facilities of a cable television system, electronic communication network, internet streaming service, radio station, telephone or cellular system, television station or satellite system and which:
(A) Refers to or depicts a clearly identified candidate for nomination or election to public office or a clearly identified ballot proposition and which does not expressly advocate the nomination, election or defeat of the candidate or the adoption or defeat of the ballot proposition;
(B) Can only be reasonably interpreted as an appeal to vote for or against the candidate or ballot proposition;
(C) Is made within thirty (30) calendar days of a primary election, sixty (60) calendar days of a general election or twenty-one (21) calendar days of any special election during which the candidate or ballot proposition will appear on the ballot; and
(D) Is targeted to the electors in the geographic area:
(I) The candidate would represent if elected; or

**Page 25 of 30**

(II) Affected by the ballot proposition.

Wyo. Stat. § 22-25-101(c)(i). The definition continues by explaining what an electioneering communication is not:

> "Electioneering communication" does not mean:
>     (A) A communication made by an entity as a component of a newsletter or other internal communication of the entity which is distributed only to members or employees of the entity;
>     (B) A communication consisting of a news report, commentary or editorial or a similar communication, protected by the first amendment to the United States constitution and article 1, section 20 of the Wyoming constitution, which is distributed as a component of an email, internet website, magazine, newspaper or periodical or by the facilities of a cable television system, electronic communication network, internet streaming service, radio station, television station or satellite system;
>     (C) A communication made as part of a public debate or forum that invites at least two (2) opposing candidates for public office or one (1) advocate and one (1) opponent of a ballot proposition or a communication that promotes the debate or forum and is made by or on behalf of the person sponsoring or hosting the debate or forum;
>     (D) The act of producing or distributing an electioneering communication.

Wyo. Stat. § 22-25-101(c)(ii).

This definition was applied to WyGO's radio advertisement by Defendants, who determined the advertisement was an electioneering communication. The Plaintiff does not contest it ran a radio advertisement through a commercially run station which referred to two opposing state senate candidates within thirty days of the primary election in a geographic area where the elected candidate would represent. (ECF No. 1 at 7.) Thus, the only allegedly vague portion of the definition is subsection (B) which requires an electioneering communication be one that "can only be reasonably interpreted as an appeal to vote for or against the candidate or ballot proposition." The Plaintiff does not contest

that the radio advertisement "described Senator Bouchard as a 'brave champion' who will 'fight for your gun rights' and 'stand against' the 'violent thugs [who] are rioting, looting, and vandalizing.' The ad referred to Johnson as 'pathetic' and warned that candidates like Johnson would 'stab us in the back the first chance they get.'" (ECF No. 30-9 at 3.) Under an objective reading or listening of the advertisement, it can only be reasonably interpreted as an appeal to vote for Senator Bouchard and against Senator Johnson. *See* Wyo. Stat. § 22-25-101(c)(i)(B). The words used to describe the two senators, combined with WyGO's mission to strongly advocate for gun rights and candidates who support them, can be reasonably understood in no other way. Thus, it was appropriate for the Defendants to find the radio advertisement was an electioneering communication under Wyoming's disclosure regime.

Plaintiff argues the radio advertisement was a commentary, and thus exempted from the definition of an electioneering communication. (ECF No. 24 at 22.) Plaintiff cites to the Merriam-Webster Dictionary, arguing that commentary can include something as generic as "expression of opinion." (ECF No. 30 at 9.) Defendants counter that the word must be read in the context it demands, and "it is apparent" that this word is simply meant to exempt media from the statute. (ECF No. 33 at 5.) Defendants continue, saying that merely because a communication expresses an opinion does not mean it meets the definition of "commentary" under § 22-25-106(h). (ECF No. 30 at 9-10).

This is not so obvious. No prior case law provides a definition of "commentary," nor does Wyoming's statutory scheme give a more specific understanding of the word in context. The definition for "commentary" in the Merriam-Webster dictionary includes

three possible definitions, including additional subparts, leaving a reader with five possible interpretations of what this word could mean. *Commentary*, <u>Merriam-Webster Online</u> (last accessed Sept. 17, 2021) https://www.merriam-webster.com/dictionary/commentary. Oxford Dictionary also includes three possible definitions of the word, including the definition "a criticism or discussion of something." *Commentary*, <u>Oxford Learner's</u> <u>Dictionary</u> (last accessed Sept. 17, 2021) https://www.oxfordlearnersdictionaries.com/us/definition/american_english/commentary #:~:text=commentaries)%20commentary%20(on%20something),results%20as%20they% 20are%20announced. Based on the numerous dictionary definitions alone, it is not clear that a person of ordinary intelligence would know what is allowed and what is prohibited. *Faustin,* 423 F.3d at 1201. Nor is it clear to this Court that the statute couldn't be arbitrarily or discriminately enforced. *Id.* Accordingly, Plaintiff has stated sufficient facts upon which relief can be granted, surviving the motion to dismiss on this claim.

Plaintiff also contends that § 22-25-106(h) uses "relate to" to encompass a large amount of communications but does not clearly define what "relating to electioneering communications" actually means. (ECF No. 30 at 12.) Plaintiff claims the language does not give sufficient guidance on which communications must be reported, because "relate to" is a vague term. (*Id.*) Defendants do not offer a pointed counterargument for this term, but merely cite other electioneering statutes that they contend are more burdensome but have still been upheld. (ECF No. 33 at 14-15.)

Other courts have struggled with the phrase "relate to," acknowledging that it can be difficult to interpret exactly what legislators intend. *Overall v. Sykes Health Plan*

*Services, Inc.*, No. 3:05-CV-36-H, 2006 WL 1382301, at \*2 (W.D. Ky. May 16, 2006) ("Because of the somewhat vague nature of the phrase 'relates to,' courts . . . have struggled to establish generally applicable rules for establishing which state laws "relate to" or have a "connection with" an employee benefits plan."); *Harris v. Canada Life Assur. Co.*, No. 2:06-cv-1402-ECR-GW, 2008 WL 544996 at \*2 (D. Nev. Feb. 26, 2008) ("[t]he statutory phrase "relate to" is vague[.]"). The United States Supreme Court even expressed frustration at the statutory use of "relate to" when analyzing the Employee Retirement Income Security Act. *See De Buono v. NYSA-ILA Med. & Clinical Services Fund*, 520 U.S. 806, 813-14 (1997). In fact, in a review of other state electioneering statutes, no other state uses the phrase "relate to an electioneering communication" in the same way as § 22-25-106(h). Because of the uncertainty surrounding this phrase, Plaintiff has stated a claim upon which relief may be granted.

The remainder of Plaintiff's as applied vagueness claim notes the Defendant's failure to clarify "whether the July 15 email, August 1 mailer, and September 24 email were 'electioneering communications'" which "contributed to the chilling effect that these vague enactments have on WyGO's speech." (ECF No. 17 at 1.) However, Defendants imposed no disclosure requirements on those communications—only to the radio advertisement. Thus, it follows that the Defendants determined those other communications were not electioneering communications subject to disclosure and never "applied" the statutory disclosure regime to them. When considering an as applied challenge, a court must consider the challenged statute "in light of the charged conduct." *United States v. Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009). Because Defendants did

not impose any disclosure requirements as to those communications other than the radio advertisement, there can be no as-applied challenge. *See Galbreath*, 568 F.App'x at 539. Accordingly, Plaintiff's remaining vagueness challenges fail to state a claim for which relief can be granted.

CONCLUSION

In accordance with the foregoing discussion, the only available remedy Plaintiff can seek is declaratory relief under the *Ex Parte Young* doctrine against Defendants Buchanan, Wheeler, Schon, and Hill in their official capacity. The only claims that remain in this action are WyGO's claims that: (1) "relate to" (§ 22-25-106(h)) and "commentary" (§ 22-25-101(c)(ii)(B)) are unconstitutionally vague under the First Amendment; and (2) Wyoming Statute § 22-25-106(h) is unconstitutional as applied to WyGO.

ORDERED that Defendants' *Motion to Dismiss* (ECF No. 23) is DENIED with respect to the as-applied first amendment challenge to Wyoming Statute § 22-25-106 and the vagueness challenges regarding "related to" and "commentary," and GRANTED as to all other claims.

Dated this _17th_ day of September, 2021.

Scott W. Skavdahl
United States District Judge