IN THE UNITED STATES DISTRICT COURT

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2022 MAR 21 PM 4:52

FOR THE DISTRICT OF WYOMING
MARGARET BOTKINS, CLERK
CASPER

---

WYOMING GUN OWNERS,

        Plaintiff,

vs.

Wyoming Secretary of State EDWARD
BUCHANON, Wyoming Attorney
General BRIDGET HILL, Wyoming
Deputy Secretary of State KAREN
WHEELER, and Wyoming Secretary of
State Election Division Director KAI
SCHON, in their official capacities,

        Defendants.

Case No.  21-CV-108-SWS

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S CROSS-MOTION FOR SUMMARY
JUDGMENT**

---

This case demonstrates the delicate balance of the First Amendment right to engage

in political speech verses the need to provide for an informed electorate during elections

by requiring disclosure of those who are funding media and promoting certain candidates

or issues throughout election season. However, while this is of critical importance, the State

can only impose these disclosure and disclaimer requirements where it satisfies exacting

scrutiny. With these competing interests and standard in mind, the Court examines whether

Wyo. Stat. Ann. § 22-25-106(h) violates the First amendment and holds that it does.

1

## FACTUAL BACKGROUND

Plaintiff Wyoming Gun Owners (WyGO") is a non-profit corporation whose mission is "defending and advancing the Second Amendment rights of all law-abiding citizens in the state of Wyoming—and exposing legislators who refuse to do the same thing." (ECF No. 30 at 6.) WyGO's members subscribe to receive communications from WyGO about pertinent issues relevant to state and local Second Amendment legislation. Anyone can sign up to receive emails from WyGO about gun policy and candidate positions. (*Id.* at 7.) WyGO uses a variety of media and methods to promote its messaging, including posts to its own website, dissemination of candidate surveys, videos, emails to members and non-members, radio ads, digital ads, social media posts, and direct mailings. (*Id.*) WyGo often increases its messaging during election season when gun-policy issues peak public interest.

In August 2020, before Wyoming's August primary election (ECF No. 46 at 4), WyGO paid a Cheyenne commercial radio station roughly $1,200 to run a minute-long radio ad. (*Id.* at 7.) The radio advertisement mentioned two opposing state senate candidates by name: Anthony Bouchard and Erin Johnson. The ad commended Bouchard as a champion and "a nationally known conservative leader who has always led the fight for Wyoming gun owners." (ECF No. 46 at 3.) The ad criticized Erin Johnson, "a self-described country-club, chamber of commerce moderate" for failing to discuss gun rights

2

on her political website. (*Id.*) The ad stated this failure was "pathetic" and so was Erin

Johnson.[1] (*Id.*)

On October 14, 2020, WyGO received a notice from Defendant Kai Schon, the

Election Division Director of the Wyoming Secretary of State's Office, stating the Election

Division received a complaint about the radio ad. (ECF No. 30-6.) Specifically, this

complaint alleged WyGO had "engaged in political activity which would require campaign

finance reports to be filed" under Wyoming's campaign finance laws. (*Id.* at 2.) This notice

did not specify what communication constituted political activity but determined

"advertisements paid for by WyGO" were "clearly electioneering communications." (*Id.*)

Because WyGO had not filed an itemized statement with contributions and expenditures

with the Secretary of State's office, WyGO had violated § Wyo. Stat. Ann. § 22-25-106(h).

As a consequence, the notice required WyGO to pay a $500 civil fine. (*Id.*)

Wyo. Stat. Ann. § 22-25-106(h) states in relevant part:

> An organization that expends in excess of five hundred dollars ($500.00) in
> any primary, general, or special election to cause an independent expenditure
> or electioneering communication to be made shall file an itemized statement
> of contributions and expenditures with the appropriate filing office[.] The
> statement shall:
>
> (i)   Identify the organization causing the electioneering
>       communication or independent expenditure to be made and
>       the individual acting on behalf of the organization causing
>       the communication or expenditure to be made, if applicable;
>       . . .
>
> (iv)  Only list those expenditures and contributions which relate
>       to an independent expenditure or electioneering
>       communication;

---

[1] The Court already stated this ad was the functional equivalent of express advocacy and clearly falls within
Wyoming's definition of an electioneering communication. (ECF No. 38 at 27); *see also Fed. Election Comm'n v.
Wisc. Right to Life, Inc.*, 551 U.S. 449, 469–470 (2007).

> (v)   Set forth the full and complete record of contributions which relate to an independent expenditure or electioneering communication, including cash, goods or services and actual and promised expenditures. The date of each contribution of one hundred dollars ($100.00) or more, any expenditure or obligation, the name of the person from whom received or to whom paid and the purpose of each expenditure or obligation shall be listed. All contributions under one hundred dollars ($100.00) shall be reported but need not be itemized. Should the accumulation of contributions from a person exceed the one hundred dollar ($100.00) threshold, all contributions from that person shall be itemized[.]

In response to the notice from Kai Schon, counsel for WyGO asked the Election Division to "promptly retract [their] threat against WyGO and dismiss the complaint" and argued the notice did not specify what communication violated the statute. (ECF No. 30-7 at 2.) The Office of the Attorney General replied, identifying the radio ad as the offending communication. (ECF No. 30-8 at 3.) The letter from the Attorney General's office explained the radio advertisement was defined as an electioneering communication, under Wyo. Stat. Ann. § 22-25-101(c), because the ad identified two candidates up for election with less than thirty days before the primary and could only be reasonably interpreted as an appeal to vote for Bouchard and against Johnson. (*Id.*) The ad "discusses the two candidates' purported positions on those issues as a way to instruct listeners which candidate to support or oppose." (*Id.*)

Wyo. Stat. Ann. § 22-25-101(c) defines an electioneering communication as:

> [A]ny communication, including an advertisement, which is publicly distributed as a billboard, brochure, email, mailing, magazine, pamphlet or periodical, as the component of an internet website or newspaper or by the facilities of a cable television system, electronic communication network,

internet streaming service, radio station, telephone or cellular system, television station or satellite system and which:

> (A) Refers to or depicts a clearly identified candidate for nomination or election to public office or a clearly identified ballot proposition and which does not expressly advocate the nomination, election or defeat of the candidate or the adoption or defeat of the ballot proposition;
> (B) Can only be reasonably interpreted as an appeal to vote for or against the candidate or ballot proposition;
> (C) Is made within thirty (30) calendar days of a primary election, sixty (60) calendar days of a general election or twenty-one (21) calendar days of any special election during which the candidate or ballot proposition will appear on the ballot; and
> (D) is targeted to the electors in the geographic area:
>
>> (I) The candidate would represent if elected; or
>> (II) Affected by the ballot proposition.

WyGO did not respond with a campaign finance report, any type of electioneering communication or expenditure disclosure statement. On December 2, 2020, the Secretary of State imposed a final order directing WyGO to pay the $500 civil fine. (ECF No. 30-9.) The order specified the penalty was imposed for the $1200 spent on the radio ad. (ECF No. 30-9 at 3.)[2] WyGO paid the fine (ECF No. 51 at 30 n. 5) and initiated this action in June 2021 asserting four claims for relief (ECF No. 1).

Defendants promptly filed a Motion to Dismiss Plaintiff's Complaint. (ECF No. 23). In granting in part and denying in part Defendants' Motion to Dismiss (ECF No. 38) this Court dismissed several of Plaintiff's claims, leaving only three issues for decision on motion for summary judgment: (1) whether "relate to" as used in § 22-25-106(h)(iv) is

---

[2] While WyGO brings up several other potentially problematic publications, including two email blasts and a mailed brochure, the Final Order only focused on the radio advertisement. (ECF No. 51 at 12; ECF No. 30-9). The Court will follow the final order and analyze the issue in the context of the radio advertisement only.

unconstitutionally vague; (2) whether "commentary" as used in §22-25-101(c)(ii)(B) is unconstitutionally vague; and (3) whether Wyoming Statute § 22-25-106(h) is unconstitutional as applied to WyGO because it chills speech and violates freedom of association under the First amendment. (*See* ECF No. 38.) Plaintiff also filed for a preliminary injunction to prevent Defendants from enforcing § 22-25-106(h) and § 22-25-101(c)(i). (ECF No. 29.) While the Court held Plaintiff was likely to succeed on the merits of their claim, in the absence of any impending election, it found there was no risk of immediate injury and denied the motion for preliminary injunction. (ECF No. 39.) The issue is now before the Court on cross-motions for summary judgment.

Defendants argue the radio advertisement could only reasonably be interpreted as an appeal to vote for Bouchard and against Johnson. (ECF No. 46 at 10.) Defendants cite *Federal Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007), which held "a court should find that an ad is the functional equivalent of express advocacy only if the ad is susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *Id.* at 470. Based on this precedent, § 22-25-106(h) is not unconstitutional as applied to WyGO, because Supreme Court case law dictates the State may regulate the functional equivalent of express advocacy.

The Defendants then argue neither "relate to" nor "commentary" are unconstitutionally vague. "Relate to" cannot be vague because the statute has an obvious application: "if the funds paid for an electioneering communication, the expenditure or contribution must be reported[.]" (ECF No. 46 at 17.) Plaintiff only argues this statute is vague because Plaintiff "failed to institute internal record-keeping practices that allow it to

6

easily attribute individual contributions to specific expenditures." (*Id.* at 18.) "Commentary" is not unconstitutionally vague because, read in the context of the statute, it clearly is "in the same vein of news reports and editorials in the media, not paid advertising for a specific candidate." (*Id.* at 15.) A person of ordinary intelligence would understand commentary is the exception for media outlets, not paid political advertisements. (ECF No. 52 at 18.)

Plaintiff utilizes their response mainly to address Defendants' exhibits showing communications between Bouchard and Aaron Dorr, treasurer and principle of WyGO.[3] (ECF No. 53.) Plaintiff reiterates its confusion over the word "commentary," arguing that if the statutory scheme "was meant to be applied narrowly to a limited class of speakers, then it should have been drafted accordingly" but as currently drafted, it does not give clear guidance to WyGO. (*Id.* at 10.) Plaintiff also points to the Court's earlier order, finding the regime did not withstand exacting scrutiny. (*Id.* at 11.)

In their cross motion for summary judgment, Plaintiff requests a permanent injunction against Defendants to prevent them from enforcing either disputed statute against WyGO. (ECF No. 47 at 1.) Plaintiff also seeks declaratory relief from this Court holding both disputed statutes are unconstitutional. (*Id.* at 2.) Plaintiff argues § 22-25-106(h) is not narrowly tailed, as required under the exacting scrutiny standard, because it

---

[3] The Court agrees these communications are not relevant to determining the constitutionality of the Wyoming statutes. At most, these exhibits show the State may have an interest in knowing about the connection between Bouchard and WyGO. But the Court is already aware of the government's interest in knowing who is speaking about a candidate before an election and the potential connections between organizations, donors, and candidates. *See Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 369 (2010). The Court does not see a need to further address these exhibits in this Order.

lacks an earmarking component. (ECF No. 51 at 13.) General disclosures chill association and the administrative burdens required by itemized reports further burden the organization's First amendment rights. (*Id.* at 16.) Plaintiff next argues WyGO should be entitled to take advantage of the "commentary" exception under § 22-25-101(c)(ii)(B) but this exception is too vague to meet constitutional requirements—the exception is so broad it swallows the rule. (*Id.* at 21, 23.) "Relate to" is similarly vague because it does not put citizens on notice of the bounds of the law. (*Id.* at 26.) Rather than giving any guidance on how to determine what donations "relate to" an electioneering communication and must be reported, Defendants ask WyGO to simply disclose all donors. (*Id.* at 26.) Plaintiffs request the Court invalidate the entire electioneering communications regime as it applies to WyGO. (*Id.* at 28.)

In response, Defendants argue § 22-25-106(h) is narrowly tailored because the state has an interest in knowing who is speaking about candidates up for election. (ECF No. 52 at 6.) The current statutory scheme prevents individuals from donating to WyGO under the guise of supporting Second amendment rights when they actually support candidates for other unrelated reasons. (*Id.* at 7.) Individuals would be allowed to donate to WyGO to conceal the real motivations for supporting certain candidates if the statutory scheme was changed. (*Id.* at 7.) The current law allows organizations discretion in how to comply with the statute. (*Id.* at 12.) WyGO should earmark donations voluntarily to comply with the statute. (*Id.* at 11.) Overall, disclosure is "necessary to ensure that candidates have not agreed to provide special treatment to the donor after an election." (*Id.* at 14.)

## LEGAL STANDARD

Summary judgment is appropriate where a movant shows "there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (2010) (emphasis added). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal quotations and citations omitted). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

In reviewing a motion for summary judgment, the Court is to determine whether there is evidence to support a party's factual claim, *Jarvis v. Potter*, 500 F.3d 1113, 1120 (10th Cir. 2007), and, in doing so, must view the evidence and draw reasonable inferences in a light most favorable to the nonmoving party, *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011). "However, unsupported conclusory allegations do not create a genuine issue of fact [,]" *id*. (internal quotations and citations omitted), and "mere speculation unsupported by evidence is insufficient to resist summary judgment [,]" Martinez *v. CO2 Serv., Inc.*, 12 F. App'x 689, 695 (10th Cir. 2001) (citations omitted).

This Court has recognized summary judgment is not a "disfavored procedural shortcut;" rather, "it is an important procedure 'designed to secure the just, speedy and inexpensive determination of every action.'" *Robert L. Kroenlein Tr. ex rel. Alden v.*

9

*Kirchhefer*, No. 11-CV-284-S, 2013 WL 1337385, at *1 (D. Wyo. Mar. 31, 2013), aff'd, 764 F.3d 1268 (10th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" *Id.* (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)).

**ANALYSIS**

**1. Standing**

A potential standing issue was briefly addressed at oral argument. (Disp. Mot. Hr'g Tr., p. 49.) As an initial matter, the Court finds Plaintiff does have standing to challenge the Wyoming statutory scheme. To establish standing, a plaintiff must show injury in fact. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). The injury must be concrete and particularized and actual or imminent—not hypothetical. *Id.* An allegation of future injury may suffice if the threatened injury is certainly impending or there is a substantial risk that the harm will occur. *Id.* (internal quotations omitted).

Plaintiff has already shown actual, concrete injury in this case—the $500 civil fine. (ECF No. 30-9.) This is sufficient for Plaintiff to have standing to challenge § 22-25-106(h). Additionally, the § 22-25-101 definition of electioneering communication is at issue because it defines the relevant terms for § 22-25-106(h). Accordingly, Plaintiff has standing to challenge the potential vagueness of "relate to" and "commentary" because such definitions are integral to understanding Wyoming's electioneering disclosure and reporting requirements.

"When it comes to the freedom of association, the protections of the First Amendment are triggered [by even the] risk of a chilling effect on association . . . because the First Amendment freedoms need breathing space to survive." *Americans for Prosperity Foundation v. Bonta*, 141 S.Ct. 2373, 2389 (2021). Plaintiff submitted an affidavit that WyGO members were concerned about potential disclosure of their names. (ECF No. 30-1 at 4.) WyGO also expressed its intent to forego speaking during election season because of the potential for more fines. (*Id.* at 9.) There is a substantial risk that donor disclosure could chill donations to WyGO. *See Americans for Prosperity Foundation*, 141 S.Ct. at 2389. This potential infringement on WyGO members' constitutional right to freedom of association, coupled with WyGO's decision to forego speaking during election season rather than face another fine, is enough to establish Plaintiff's standing in this action. *See National Commodity and Barter Ass'n v. Archer*, 31 F.3d 1521, 1529 (10th Cir. 1994).

### 2. "Relate to" is Unconstitutionally Vague

To better understand the context and framework within which Wyoming's Statutes must be examined, it is necessary to understand the scope of constitutionally permissible disclaimer and disclosure requirements for electioneering communications. Because disclaimer and disclosure restrictions do not limit spending on political campaigns or prevent people from speaking, they are not subject to strict scrutiny. *See Citizens United v. Federal Election Commission,* 558 U.S. 310 at 340 (2010); *see also Ams. For Prosp. Found. v. Bonta*, 141 S.Ct. 2373, 2382–83 (2021). Nonetheless, due to their impacts on associational freedom they are subject to "exacting scrutiny" which requires the State to

11

show a substantial relation between the disclosure requirement and a sufficiently important government interest. *Independence Institute v. Williams*, 812 F.3d 787, 792 (10th Cir. 2016). It is with these requirements in mind that Wyoming's Statutes must be evaluated.

"The practice of striking down a law because it is void for vagueness is not unique to the First Amendment jurisprudence, but rather is a general principle of constitutional and criminal law." *Smolla and Nimmer on Freedom of Speech*, § 6:13 (2014). For a court to hold a civil statute is void for vagueness, the statute must be so indefinite that it does not actually create a rule or standard at all. *Griffin v. Bryant*, 30 F.Supp.3d 1139, 1170 (D.N.M. 2014) (internal citations and quotations omitted). Such a statute will be unconstitutionally vague if a reasonable person could not understand the core meaning of the law. *Id.*

Under Wyo. Stat. § 22-25-106(h), an organization spending more than $500 on an electioneering communication must file an itemized statement of contributions and expenditures. Among other requirements, the statement need "only list those expenditures and contributions which *relate to* an independent expenditure or electioneering communication." *Id.* (emphasis added).

The Supreme Court noted the inherent vagueness in the phrase "relate to" when interpreting a federal statute applicable to ERISA benefit plans. *De Buono v. Nysa-Ila Med. & Clinical Servs. Fund*, 520 U.S. 806, 813 n.7 (1997) (quoting *Cal. Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 335 (1997) (J. Scalia concurring). "[A]pplying the "relate to" provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else." *Id.* Other Courts have made this same observation. *Painter v. Golden Rule Ins. Co.*,

12

121 F.3d 436, 439 (8th Cir. 1997); *Overall v. Sykes Health Plan Services, Inc.*, No. 3:05-CV-36-H, 2006 WL 1382301, at \*2 (W.D. Ky. May 16, 2006); (*Harris v. Canada Life Assur. Co.*, No. 2:06-CV-1402, 2008 WL 544996, at \*2 (D. Nev. Feb. 26, 2008)).

While these cases examined "relate to" in the context of ERISA, the Court finds the same applicability to Wyoming's statute. The statute provides no guidance for what expenditures or contributions "relate to" electioneering communications. By this definition, a donation earmarked for electioneering certainly would qualify. So could money paid to the organization's full-time employees who happened to work on the ad during election season. By this broad phrase, nothing prevents the State of Wyoming from requiring disclosure of expenses spent on gas driving to the Cheyenne radio station. As the Defendants state in their brief, this wording undoubtedly encompasses funds paid for an electioneering communication. (ECF No. 46 at 17) ("this is a rather mundane analysis: if the funds paid for an electioneering communication, the expenditure or contribution must be reported, assuming all other threshold requirements are met"). However, the statute is not limited to monetary contributions and as worded there is no way to determine, under the current statutory language, what goods, services, or promised expenditures are sufficiently "related to" electioneering communications. Based upon its current language, the statute could also encompass many more, indirectly related expenditures.

A reasonable person could read the statute and have trouble deciphering what "relate to" means. This statute requires understanding by individuals or organizations, such as WyGO, who are not well versed in the intricacies of the law or statutory interpretation. These organizations could rightfully face confusion when compiling expenditure reports

because a number of different, unrelated expenditures could arguably "relate to" the electioneering communication. This statute does not actually create a standard for organizations required to disclosure expenditures and itemized contributions—it merely purports to under the guise of legalese. Accordingly, the phrase "relate to" as used in Wyo. Stat. Ann. § 22-25-101(h)(iv) is void for vagueness.

### 3. "Commentary" is Not Unconstitutionally Vague

Under the current Wyoming Statutory scheme, a "communication consisting of a news report, commentary or editorial or a similar communication, protected by the first amendment to the United States constitution and article 1, section 20 of the Wyoming constitution . . ." does not qualify as an electioneering communication. Wyo. Stat. § 22-25-101(c)(ii)(B). Accordingly, an organization does not need to provide an itemized statement of contributions and expenditures for such communications. *See* § 22-25-106(h). Plaintiff argues the word "commentary" is vague because it is so broad as to swallow the rule. (ECF No. 51 at 23.) WyGO publishes a broad spectrum of what it argues is commentary on Second amendment rights. (*Id.* at 24.) This wording does not provide WyGO any guidance on which of their communications would constitute electioneering communications and which communications would be exempted. (*Id.* at 24.) However, when examined in the context of the statutory scheme as a whole and a dose of commons sense, a person of ordinary intelligence could understand the meaning.

The Court first notes similar language is found in other states' electioneering communications statutory schemes. Colorado exempts "news articles, editorial endorsements, opinion or *commentary* writings" from the definition of an electioneering

14

communication. Colo. Const. Art. 28, § 2(7)(b)(I), *held unconstitutional on other grounds Dallman v. Ritter*, 225 P.3d 610 (Sup. Ct. Colo. 2010). The District of Colorado explicitly ruled this section was not vague because, read as a whole, "a person of ordinary intelligence" would understand what communications fall under this exception. *Colo. Right to Life Comm.*, 395 F.Supp.2d 1001, 1018 (D. Colo. 2005).[4] Montana's scheme also utilized the word commentary when defining exceptions to electioneering communications and the Ninth Circuit upheld that statute. *Nat'l Assn. for Gun Rights, Inc. v. Mangan*, 933 F.3d 1102, 1108 (9th Cir. 2019).

When determining the meaning of a statute, the court must begin by examining the plain language of the law. *St. Charles Inv. Co. v. C.I.R.*, 232 F.3d 773, 776 (2000). "Absent ambiguity or irrational result, the literal language of a statute controls." *Edwards v. Valdez*, 7889 F.2d 1477, 1481 (10th Cir. 1986). The Court acknowledged in its Order on motions to dismiss that "commentary" had several dictionary definitions, each with its own nuances. (ECF No. 38 at 27–28.)  However, dictionary definitions alone are not conclusive of ambiguity in a statute. *Yates v. United States*, 574 U.S. 528, 537 (2015). Courts can determine ambiguity by looking at the context in which the language is used. *Id.* The meaning of a word cannot be determined in isolation but must be drawn from the surrounding context. *United States v. United Park City Mines Co.*, 2:17-CV-482, 2021 WL 3862082, at *9 (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993).

---

[4] This was the same statute discussed and upheld by the Tenth Circuit in *Independence Institute v. Williams*, 812 F.3d 787 (10th Cir. 2016).

The Court can also look to canons of statutory construction to aid in this process. *Yates*, 574 U.S. at 539; *Gustagson v. Alloyd Co., Inc.*, 513 U.S. 561, 575 (1995). The principle of *noscitur a sociis* dictates a word must be known by the company it keeps. *Yates*, 574 U.S. at 543. When § 22-25-101(c)(ii)(B) is read in context, Plaintiff's argument is unconvincing.

Commentary, standing alone, could have many different meanings. However, when grouped next to "news report" and "editorial," it is apparent the Wyoming legislature had a certain definition of commentary in mind. Political commentary is discussion or criticism on current political events or the political climate. This is similar to a news report, which may mention candidates by name but seeks to inform viewers rather than advocate for one candidate over the other. In the same way, an editorial gives an opinion on topical issues, including politics.

Justice Stewart's concurrence in *Jacobellis v. State of Ohio* is relevant here. 378 U.S. 184, 197 (1964). Just as Justice Stewart pointed out the difficulty in defining obscene material, this Court notes the challenge in defining the difference between commentary and an electioneering communication, but a person would "know it when [they] see it." *Id.* at 197 (J. Stewart concurring). While the line between these exceptions and an electioneering communication, the functional equivalent of express advocacy, may be thin, the Court finds a reasonable person would understand that commentary does not encompass paid advertisements comparing two candidates for office. A reasonable person could further read "commentary" as a part of a list including news reports and

editorials and understand which sorts of communications the exception would apply to.[5]
The use of "commentary" in Wyo. Stat. § 22-25-101(c)(ii)(B), read in context and with a
view of its place in the overall statutory scheme, sufficiently gives a reasonable person
notice of what is an exception to an electioneering communication under the statute.[6] *See
Gundy v. United States*, -- U.S. --, 139 S.Ct. 2116, 2126 (2019). Accordingly, the statute
is not void for vagueness.

### 4. Wyo. Stat. Ann. § 22-25-106(h) Is Unconstitutional As Applied To WyGO

Wyo. Stat. Ann. § 22-25-106(h) requires:

> An organization that expends in excess of five hundred dollars ($500.00) in
> any primary, general or special election to cause an independent
> expenditure or electioneering communication to be made shall file an
> itemized statement of contributions and expenditures with the appropriate
> filing office . . ..

As discussed above, "[d]isclaimer and disclosure requirements may burden the ability to
speak, but they impose no ceiling on campaign-related activities, and do not prevent
anyone from speaking." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366
(2010). Thus, they are subject to exacting scrutiny. *Independence Institute v. Williams*,
812 F.3d 787, 792 (10th Cir. 2016). Exacting scrutiny does not require the government to

---

[5] It appears the Wyoming Secretary of State understands these distinctions as well, because it declined to institute
any penalties for WyGO's other publications, including email blasts and mailed pamphlets. (ECF No. 51 at 12.)
[6] Montana Admin. R. 44.11.605 gives some guidance to this nuance. Mont. Admin. R. 44.11.605(1) provides a
similar definition to electioneering communications. Mont. Admin. R. 44.11.605(3) goes on to define what is not an
electioneering communication, stating it does not include communications that refer to a political party, ballot issue,
depicts the name or image of one or more clearly identified candidates "but that is susceptible to no reasonable
interpretation other than as unrelated to the issue or the election." This definition appears to accurately encompass
Wyoming's use of the word "commentary" in this context. The Ninth Circuit held 44.11.605(3) was not facially
invalid due to vagueness because "uncertainty at a statute's margins will not warrant facial invalidation if it is clear
what the statue proscribes 'in the vast majority of its intended applications.'" *Montanans for Cmty. Dev. v. Mangan*,
725 F. App'x 280, 283 (9th Cir. 2018) (internal citations and quotations omitted).

use the least restrictive means to achieve its goals, but the means must be narrowly

tailored to the government's interest. *Americans for Prosperity Foundation*, 141 S.Ct. at

2384. This is because "compelled disclosure of donors who make political contributions

or expenditures . . . pose a significant threat to associational freedom." *Independence

Institute*, 812 F.3d at 792 (citing *Buckley v. Valeo*, 424 U.S. 1, 64–65 (1976)).

Several government interests meet the burden required under exacting scrutiny,

including deterring actual corruption, avoiding the appearance of corruption, and

gathering the data necessary to enforce and detect violations of other election laws.[7]

*Independence Institute*, 812 F.3d at 792. Defendants assert the anti-corruption and

informational interests are relevant here. (ECF No. 52 at 6.) The disclosure requirements

are important for the public to know who is speaking for a candidate shortly before an

election. (*Id.* at 8 (citing *Independence Institute*, 812 F.3d at 795)).

Recently, the Supreme Court recognized the importance of protecting freedom of

association in a disclosure context. *Americans for Prosperity*, 141 S.Ct. at 2382. "It is

hardly a novel perception that compelled disclosure of affiliation with groups engaged in

advocacy may constitute as effective a restraint on freedom of association as other forms

of governmental action." *Id.* Even if these disclosures are only made to certain

government entities, rather than the general public, the disclosure requirements may still

---

[7] Both parties cite to *Sampson v. Buescher* and *Coalition for Secular Gov't v. Williams* in their motions for summary judgment, but the Court notes this case deals with electioneering communications, while *Sampson* discussed disclosures related to ballot initiatives. "The legitimate reasons for regulating candidate campaigns apply only partially (or perhaps not at all) to ballot issue campaigns." *Sampson v. Buescher*, 625. F.3d 1247, 1255 (10th Cir. 2010); *see also Coalition for Secular Gov't v. Williams*, 815 F.3d 1267 (10th Cir. 2016). *Sampson* and *Williams* are not in line with the analysis here, because of their focus on ballot initiatives.

chill association. *Id.* (quoting *Shelton v. Tucker*, 364 U.S. 479, 486 (1960)). Plaintiff argues the Wyoming statutory scheme does not comply with the narrow tailoring required by *Americans for Prosperity*.

As a preliminary matter, the Court notes *Americans for Prosperity* did place special emphasis on donor disclosure requirements and their tendency to chill association. Notably, however, *Americans for Prosperity* did not discuss election disclosure laws, but rather focused on disclosure of charity information to the California Attorney General for purposes of supervision and regulation of charitable fundraising. There was no statute in that case, but rather a regulatory practice of the Attorney General's office which required charitable organizations to file an Internal Revenue Service Form 990, with the attached Schedule B, to renew their registrations as charities in the state of California. *Americans for Prosperity*, 141 S.Ct. at 2379–80. The Schedule B included disclosures of donors' names and addresses that contributed more than $5,000 in a particular tax year or those donors who had given more than two percent of the organization's total contributions. *Id.* The State of California asserted this donor information was necessary to deter and investigate fraud. *Id.* at 2387. However, the evidence established "California's interest is less in investigating fraud and more in ease of administration. This interest, however, cannot justify the disclosure requirement." *Id*. The Supreme Court found this was an unconstitutional "widespread burden on donors' associational rights . . . [which] cannot be justified on the grounds that the regime is narrowly tailored." *Id.* at 2389. The Supreme Court placed a heavy emphasis on donors' rights to freely contribute to charities of their choosing without the public's knowledge.

WyGO is required to disclose similar information, including the "name of the person from whom received or to whom paid" any donation relating to an electioneering communication, a notable similarity to the disclosures in *Americans for Prosperity*. *See* § 22-25-106(h)(v). However, in *Americans for Prosperity* the California did not have the same substantial interest in dispelling election corruption, as Wyoming has in this case.

Wyoming has a sufficiently important governmental interest in knowing who is speaking about a candidate before election. "[A] well informed electorate is as vital to the survival of a democracy as air is to the survival of human life[.]" *Gaspee Project v. Mederos*, 13 F.4th 79, 95 (1st Cir. 2021). The fact that WyGO holds a particular interest in the "issue" of gun ownership rights does not lessen the State's interest in knowing which candidates have received its support and endorsement. The State has met its burden for the first prong of exacting scrutiny. Nevertheless, Wyoming's statute is not narrowly tailored to meet this governmental interest and fails on the second prong of the test.

The Court notes two issues with the statute as currently written. First, the end of Wyo. Stat. § 22-25-106(h)(v) requires "[a]ll contributions under one hundred dollars ($100.00) shall be reported but need not be itemized. Should the accumulation of contributions from a person exceed the one hundred dollar ($100.00) threshold, all contributions from that person shall be itemized[.]" § 22-25-106(h). This section lacks any timeline for calculating the combination of donations which exceed the one-hundred-dollar threshold. For example, if a WyGO subscriber donated $20 a year for five years, they would be subject to the disclosure requirements for an insubstantial, attenuated

donation during the fifth year. While Defendants at oral argument stated the current Secretary of State has interpreted this as intending to apply only within an election cycle, they conceded this was not written in the statute. (Disp. Mot. Hr'g Tr., p. 17.) While the Court agrees it is reasonable to calculate accumulated donations within an election cycle, the simple fact is the statute does not impose any such limits. If the State is requiring organizations to disclose donors for giving a total sum of money, the State must narrowly tailor the statutory language to ensure there is a length of time within which to calculate the accumulated donations. Otherwise, small incidental donors with no intention of contributing to electioneering communications will be reported, which does not support the State's interest in knowing who is speaking before an election. There is a loss of temporal relationship.

The following example best describes the Court's second reason for finding the statute is not narrowly tailored. Suppose three donors donate money to WyGO. Donor A gives $50 in May 2020, Donor B gives $85 in June 2020, and Donor C gives $20 in July 2020. All these donations go into WyGO's general fund. WyGO pays for the $1200 ad in August 2020. Under § 22-25-106(h), WyGO must arbitrarily choose donors who "contributed" to this ad funding, even though they took money out of their general donation fund. WyGO could inadvertently need to disclose Donors A, B, and C's donations, even though none of these donations were specifically intended to go towards electioneering communications. These relatively small dollar amount donations do not warrant disclosing donor's association with WyGO, especially when these donors might very well have made these donations because they support WyGO's mission as a whole,

not to support or oppose candidates in the Wyoming primaries.[8] The statute creates a mismatch between the State's interests and the required disclosures.

This mismatch is similar to the District of Colorado's ruling in *Lakewood Citizens Watchdog Group*. In *Lakewood*, plaintiffs published two or three issues of a newsletter every year. *Lakewood Citizens Watchdog Group v. City of Lakewood*, No. 21-CV-01488, 2021 WL 4060630, at *1 (D. Colo. Sept. 7, 2021). This newsletter discussed a broad range of local issues, including mayoral and city council elections, although the newspaper also reported on non-political issues. *Id.* The newsletter did not release a Spring 2021 issue, for fear that the article previewing the 2021 city council race would be considered an independent expenditure or an electioneering communication under Lakewood Municipal Code § 2.54.020. *Id.* at *2. This determination would subject the newsletter to certain disclosure requirements, namely reporting the name and address of the individual making the expenditure to the Lakewood City Clerk under Lakewood Municipal Code § 2.54.030 and § 2.54.070. *Id.* at *5.

The court noted that, while there was an informational interest served by "knowing 'who is speaking about a candidate shortly before an election[,]'" it was not certain that a donor to Watchdog was also a person speaking about a candidate. *Id.* at *12 (quoting *Citizens United*, 558 U.S. at 369). As part of this analysis, the Court discussed *Independence Institute*, which upheld a disclosure requirement because only donations

---

[8] Defendants argue interpreting the statute in this way would lead to an absurd result (Disp. Mot. Hr'g Tr., p. 18.) but the Court disagrees. The statute as written is more susceptible to creating an absurd result, because a twenty dollar donation from a person interested in supporting WyGO's general organization may have their name disclosed only because that twenty dollars happened to be used to fund a radio ad.

specifically earmarked for electioneering needed to be reported. *Id.* (quoting *Independence Institute*, 812 F.3d at 797–98). This was less intrusive than the Lakewood code, which required Watchdog to disclose the name and address of anyone who had donated more than $250 during the year to fund the organization's newsletters. *Id.* Essentially, a person who donated to Watchdog in January of a year where there would be a November election would still need to be disclosed, even though their donation might have already been spent before the sixty-day reporting period. *Id.* This donor may have no strong feelings about a political candidate, but "simply value [the newsletter's] discussion of local issues[.]" *Id.* In contrast, a second donor may donate because they appreciate the newsletter's discussion of local politics and wish to support such coverage. *Id.* Both donors must be disclosed under the Lakewood code, as long as they gave over $250 annually. *Id.* The court held the Lakewood Code did not meet exacting scrutiny because it would be less intrusive to include an earmarking provision for specific donations intended to further the newsletter's election coverage. *Id.*

WyGO's argument presents similar facts because WyGO does not only fund electioneering communications or focus on election issues, but rather offers several media formats to keep subscribers informed on Second amendment rights. (ECF No. 1 at 4.) The Court stated in the Order on the preliminary injunction:

> [a] donor to WyGO could donate because they are interested in the political candidate surveys, the election coverage, or merely the general news coverage WyGO provides throughout the year. Under Wyoming's current statute, a donor's name would need to be disclosed regardless of which reason the donation was made. A donor may have no interest in speaking about a candidate at all, but their name and association with WyGO would still be disclosed.

23

(ECF No. 39 at 19.)

As the court in *Lakewood* found, this creates a mismatch between the State's interest and the information disclosed to the Secretary of State, especially where a donation was made before the identity of any candidate(s) was even known.

Defendants argue this could be solved if WyGO just kept sufficient records to comply with the statute. (ECF No. 52 at 19.) The Court reminds Defendants that it is not Plaintiff's burden to prove the statute is narrowly tailored. *McCutcheon v. Federal Election Comm'n*, 572 U.S. 185, 210 (2014). If the statute is written in such a way that organizations like WyGO are required to design specific bookkeeping systems to comply with the statute, it is not clearly written or narrowly tailored. It is on the state of Wyoming to prove they have narrowly tailored the statute to meet their interests and putting the responsibility on WyGO to keep proper records does not meet that burden.

Courts in the Tenth Circuit have approved or encouraged the use of earmarking to further the government's interest in knowing who is speaking about a candidate before an election. *Lakewood Citizens*, No. 21-CV-01488, 2021 WL at *12 (suggesting the use of an earmarking requirement as a means to satisfy exacting scrutiny); *Independence Institute*, 812 F.3d at 789, 799 (approving an electioneering communications statute that included an earmarking requirement). The Ninth Circuit upheld the constitutionality of a Montana electioneering statute which included an earmarking requirement. *Nat'l Assn. for Gun Rights, Inc.*, 933 F.3d at 1110 ("An incidental committee must report to whom it is making expenditures, but it is not required to report from whom it is receiving contributions unless those contributions were solicited or earmarked for a particular

24

candidate, ballot issue, or petition for nomination"). The First Circuit affirmed the

constitutionality of a Rhode Island electioneering requirement that included an "opt-out"

earmarking provision. *Gaspee Project*, 13 F.4th at 82 ("[the statute's] disclosure

requirements, though, are not absolute. They provide, for instance, that covered

organizations need not disclose any donor who elects not to have his donation used in the

funding of independent expenditures or electioneering communications").[9]

However, earmarking is not the only way to ensure the statute survives exacting

scrutiny. The absence of earmarking is not a problem in and of itself if the statute is

clearly worded. In 2020, the District of New Mexico denied a preliminary injunction of

New Mexico's electioneering statute. *Rio Grande Foundation v. Oliver*, No. 1:19-CV-

1174, 2020 WL 6063442 (D.N.M. Oct. 14, 2020). This statute provided a bifurcated

disclosure regime for electioneering communications. Any person or organization which

spent more than $9,000 in a statewide election or more than $3,000 in a non-statewide

election was required to disclose the name and address of the donor and the amount of the

donation. *Id.* at *2. Any amount over $200 had to be disclosed. However, this regulation

only applied if the expenditures were made from a separate bank account, used only for

funds related to independent expenditures for campaigns. *Id.* This separate bank account

was intended to account for anyone who earmarked donations for use during election

---

[9] The Third Circuit examined an electioneering statute in *Delaware Strong Families v. Attorney General of Del.*, 793 F.3d 304 (3d Cir. 2015). The statute required disclosure of the full name and address of any person who made contributions over $100, regardless of whether the individual had earmarked their donation or not. *Id.* at 307. In analyzing the lack of earmarking, the court stated "[o]ur analysis does not change simply because an earmarking limitation would result in a more narrowly tailored statute." *Id.* at 312. The court decided this case in 2015, before the Supreme Court clarified the standard of exacting scrutiny in *Americans for Prosperity*. *Americans for Prosperity*, 141 S.Ct. at 2383 ("exacting scrutiny does not require that disclosure regimes be the least restrictive means of achieving their ends [but] it does require that they be narrowly tailored to the government's asserted interest").

season. *Id.* In the alternative, if the organization spent money on independent expenditures for a campaign from a general bank account (not segregated by earmarked donations), the organization was required to report the name and address of any donor who gave more than $5,000 during an election cycle. *Id.* Contributors of over $5,000 could opt out of this requirement by sending a written notice that the funds should not be used towards a candidate, campaign committee or political committee. *Id.*

This statutory scheme created a balance between protecting donor association rights and anonymity while still furthering the state's interest in knowing who is speaking about a candidate before an election. It allows for disclosure of large donations even if not earmarked, although still gives donors the option to avoid disclosure by giving written notice that their funds are not to be used for election matters. This decision was issued before *Americans for Prosperity* but appears to withstand exacting scrutiny due to the bifurcated scheme set forth by the New Mexico legislature. (Disp. Mot. Hr'g Tr., p. 37.) Additionally, it is worth repeating that while *Americans for Prosperity* clarified exacting scrutiny and emphasized the importance of donor privacy in disclosure schemes, it was not a case about electioneering statutes.[10]

Whether or not the Wyoming legislature must utilize an earmarking provision is beyond the scope of this Court's jurisdiction. However, in these cases the use of earmarking provisions was a critical component in finding that the statutes were narrowly

---

[10] The Tenth Circuit recently decided a case involving the New Mexico electioneering communications and independent expenditures statutory scheme. *Cowboys for Trump, Inc. v. Oliver*, No. 21-2015, 2022 WL 454169 (10th Cir. Feb. 15, 2022). However, the court did not analyze the constitutionality of the statute because it held plaintiffs did not have standing. *Id.* at *5–6.

tailored to achieve the legitimate government interest and withstand exacting scrutiny. Regardless of what the Wyoming legislature chooses to do, as presently written Wyo. Stat. § 22-25-106(h) does not withstand exacting scrutiny because it is not narrowly tailored to achieve the State's interest.

### 5. Injunctive Relief

As a preliminary matter, Defendants claim injunctive relief is not available since the Court previously dismissed Plaintiff's § 1983 claims. (ECF No. 52 at 5.) This is not true—injunctive relief is available under *Ex parte Young*. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72 n. 16 (1996) ("an individual may obtain injunctive relief under *Ex parte Young* in order to remedy a state officer's ongoing violation of federal law"); *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007) (reiterating that the *Ex parte Young* doctrine allowed suits against state officers acting in their official capacity as long as the suit only seeks declaratory and injunctive relief). Defendants appeared to clarify this at oral argument, stating the "sole prospective injunctive relief we believe this Court can order is to enjoin the Secretary of State from seeking the required report." (Disp. Mot. Hr'g Tr., p. 25.)

Wyoming will hold primary elections in August 2022, followed by a general election in November 2022, so there is a danger the statute may be enforced in the coming months. *2022 Key Election Dates*, Wyoming Secretary of State's Office, https://sos.wyo.gov/Elections/Docs/2022/2022_Key_Election_Dates.pdf (January 2022).

The Court finds prospective injunctive relief is appropriate[11] as to § 22-25-106(h) because the statute as a whole does not survive exacting scrutiny and the phrase "relate to" is void for vagueness. The Court agrees with Defendants that the sole injunctive relief available here is to prevent the Secretary of State from requiring the electioneering report, the only obligation addressed under § 22-25-106(h).

CONCLUSION

Wyo. Stat. Ann. § 22-25-106(h) does not survive exacting scrutiny and violates the First amendment. Additionally, "relate to" as found in § 22-25-106(h)(iv) is void for vagueness. Thus, section (h) of the statute, as applied to Wyoming Gun Owners, is unconstitutional. Wyo. Stat. Ann. § 22-25-101(c)(ii)(B) is not void for vagueness and this statute survives the Plaintiff's constitutional challenge. Therefore, it is

ORDERED that Plaintiff's *Motion for Summary Judgment* (ECF No. 47) is GRANTED IN PART AND DENIED IN PART. It is further

ORDERD that Defendants' *Motion for Summary Judgment* (ECF No. 45) is GRANTED IN PART AND DENIED IN PART.

Dated this 21ˢᵗ day of March, 2022.

Scott W. Skavdahl
United States District Judge

---

[11] A district court analyzing declaratory and injunctive relief under *Ex parte Young* may order the requested relief upon the showing that a particular law violates the Constitution. The district court does not need to analyze all factors required for a permanent injunction. *See Frank v. Buchanan*, No. 20-CV-138-F, 2021 WL 3730242, at *6 (D. Wyo. July 22, 2021) *appeal docketed*, No. 21-8058 (10th Cir. Sept. 8, 2021); *see also Eagle Med LLC v. Wyoming ex rel. Dep't of Workforce Services*, 227 F.Supp.3d 1255, 1280–81 (D. Wyo. 2016).